## Mary Kenney v. Illinois State Journal Company.

1. LIBEL—*Charging Misdemeanor Involving Moral Turpitude.*—An article charging that the plaintiff, by false pretenses, procured certain persons to subscribe for a book with intent to cheat and defraud such persons, in effect charges the commission of a misdemeanor involving moral turpitude and is actionable.

2. SAME—*Defined.*—Everything printed which reflects on the character of another by imputing to him or her any felony or misdemeanor involving moral turpitude, dishonesty or dishonorable conduct, and tending to bring such other-person into public contempt, hatred, scorn, or ridicule, is a libel.

**Trespass on the Case,** for libel. Appeal from the Circuit Court of Sangamon County; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the May term, 1895. Reversed and remanded. Opinion filed December 6, 1895.

### STATEMENT OF THE CASE.

The action was case by appellant to recover damages for the publication in the newspaper of the appellee company of an alleged libelous article, which was in words and figures as follows:

## "A VERY CLEVER SWINDLE.

### The Tardy Sequel to a Yellow-haired Girl's Visit in Springfield.

A very clever swindle has been worked upon several of the State officers and heads of departments. Nearly a year ago a girl with yellow hair and winning ways introduced herself here as Miss Mary Kenney. She claimed to represent the Illinois State Federation of Labor. She canvassed for a book. When Miss Kenney told the State officers and the legislators that the State Federation of Labor was behind the book enterprise, no more questions were asked. The book was subscribed for as a matter of course, just as a man pays his taxes. Miss Kenney considerately permitted the buyers of the book to sign a contract.

Nothing was heard of the book until a few days ago, when Governor Altgeld, Secretary Hinrichson, Auditor Gore, State Superintendent Raab and numbers of others in the State house, received letters from the John W. Connorton Publishing Company, of Chicago, saying that they had drawn upon them for $10, for the 'Official Labor Gazette of 1893,' with an explanatory clause that it was given to them for collection by the Illinois Federation of Labor. On the same day the book came, an insignificant affair, well dotted with beer and tobacco advertisements. In each case the drafts were returned not honored, and most of the books went back. An answer came back from the Connorton company, saying that they would be sorry to turn back the books and contracts to the Federation with the legend 're- fused,' and hoped the matter would be reconsidered, in the interest of organized labor.

A copy was bought by Secretary Hinrichsen for the State library, but it will be returned. It is believed that the Federation of Labor had nothing to do with the enterprise."

The declaration contained three counts.

The first and second are not different in legal effect, and both allege the defendant intended by the article to impute to and charge the plaintiff with the crime of having

designedly by false pretenses obtained the signature of divers persons to a written instrument, to wit, a written contract of subscription to the book, with intent to cheat and defraud, etc.

The charge set out in the third count is, the defendant wickedly and maliciously composed and published the article, intending thereby to bring the plaintiff into public scandal and disgrace, and to impute to and charge the plaintiff with having designedly used dishonest methods, and with cheating and defrauding in obtaining subscriptions to the book.

The defendant (appellee) interposed a demurrer, general and special, to the declaration and to each count, the special causes of demurrer being stated as follows :

1. The alleged publication is not actionable in manner and form as alleged.

2. The innuendo is too broad and is not justified by the alleged publication, wherefore, etc.

The demurrer was sustained by the court and the suit dismissed, the plaintiff electing to abide by the pleading.

This is an appeal from the judgment of dismissal.

WICKETT & BRUCE and JOHN C. SNIGG, attorneys for appellant.

If the words of the article are reasonably susceptible of the meaning ascribed by the innuendo the trial court erred in sustaining the demurrer. It is for the jury to say whether or not the meaning is properly ascribed. Whether or not the words are capable of the meaning ascribed is all the courts can pass upon.

When the words of an alleged libelous publication are not reasonably susceptible of any defamatory meaning, the court is justified in sustaining a demurrer to the declaration. But if they are reasonably susceptible of two constructions, the one innocent and the other a libelous construction, then it is a question for the jury which construction is the proper one; and in such case, if the defendant demurs to the declaration, his demurrer will be overruled.

Ogden on Libel and Slander, 26. A rule involving substantially the same idea has been concisely stated thus: "It is for the court to decide whether a publication is capable of the meaning ascribed to it by an innuendo, and it is for the jury to decide whether such meaning is truly ascribed." Hays v. Mather, 15 Ill. App. 30.

In Newell on Defamation and Slander, p. 619, Sec. 35, it is said:

" But if the words are capable of the meaning ascribed to them, however improbable it may appear that such was the meaning conveyed, it is properly the province of the jury to say whether they were in fact so understood."

The article imputes the crime of obtaining, by false pretense, signatures to a written instrument, *i. e.*, contract of subscription.

In Starr & Curtis' Ann. Stat., Vol. 1, p. 781, Par. 141, Sec. 96, the offense is defined as follows:

" Whoever, with intent to cheat or defraud another designedly, by color of any false token or writing, or by any false pretense, obtains the signature of any person to any written instrument, or obtains from any person any money, personal property or other valuable thing, shall be fined in any sum not exceeding $2,000, and imprisoned not exceeding one year."

The declaration need not be as precise as an indictment; it suffices that the language fairly imputes a crime. Words calculated to induce the hearers to suspect that the plaintiff was guilty of the crime alleged are actionable. Ambiguous words are slanderous if the hearers understood them to impute a crime. Lafollette v. McCarthy, 18 Ill. App. 87; Drummond v. Leslie, 5 Blackf. 453; Dorland v. Patterson, 23 Wend. (N. Y.) 422.

" An officer was put on the trail; said trail grew exceedingly hot along here, and the cattle and Myrick were all overtaken and captured near Riley McCrary's. Such is the unadorned tale as it reached our reporter's ears." See also Republican Pub. Co. v. Miner, 3 Colo. App. 568; Halsey v. Stillman, 48 Ill. App. 413; McClean v. New York Press Co., 19 New York Sup. 262.

In Colby v. McGee, 48 Ill. App. 294, the following words were held actionable *per se*, as charging adultery:

"Clara isn't decent, and isn't what I thought she ought to be. Al. had the mumps and they went down on him. Their first child is, in my opinion, either Charlie Turner's or Charlie Hanah's."

In the case of McAllister v. Detroit Free Press Co., 76 Mich. 338, the following article was held libelous *per se :*

"A week ago, it will be remembered that a safe was cracked in Bothwell, and that two thousand dollars in money and about thirty dollars' worth of stamps were stolen. Yesterday two hard looking citizens canvassed the entire business part of Windsor, in the effort to sell stamps at half price. They at last tried to sell the stamps to Postmaster Wigle, who had them arrested. They were searched at the station, and upon one of them was found thirty dollars' worth of stamps. They gave their names as Edward H. McAllister and Lester B. French. Chief Bains will hold them to await developments."

In Ranson v. McCurley, 140 Ill. 626, it was held that to charge an unmarried woman with being pregnant was a libel *per se*, as necessarily imputing fornication.

In Booker v. State, 14 So. Rep. 562, the words, "That he was satisfied that Bryant Mancill had held witnesses in the justice of peace court to swear to lies," were held actionable *per se*, as charging the crime of bribery. Savoie v. Scanlan (La.), 9 So. Rep. 916; Doltaren v. Bushey, 16 Pa. St. 209; Gaines v. Belding (Ark.), 19 S. W. Rep. 236; Upton v. Hume (Ore.), 33 Pac. Rep. 810.

The speaker of libelous words is accountable "for the import of such words as they will be naturally understood by the hearer," even though some other persons might not ascribe the same meaning to them. Dorland v. Patterson, 23 Wend. 422; Rep. Pub. Co. v. Miner, 3 Colo. App. 575.

The words "it is believed," at the end of the printed article do not detract from the libelous nature of the article. Booker v. State (Ala.), 14 So. Rep. 562; Doltaren v. Bushey, 16 Pa. St. 209; Beehler v. Steever, 2 Whart. (Pa.), 313; Treat v. Browing, 4 Conn. 408.

BROWN, WHEELER & BROWN, attorneys for appellee, insisted that the innuendo materially enlarges the sense of the publication, and thus vitiates the pleading. Newell on Libel and Slander, page 629, Sec. 40.

It is for the court to say whether the meaning ascribed to the publication by innuendo is justified. Hayes v. Mather, 15 Ill. App. 30.

MR. JUSTICE BOGGS DELIVERED THE OPINION OF THE COURT.

Everything printed which reflects on the character of another by imputing to him or her any felony or misdemeanor involving moral turpitude or fraud, dishonesty or dishonorable conduct, and tending to bring such other person into public contempt, hatred, scorn or ridicule, is a libel. 13 Amer. & Eng. Ency. of Law, 297–299; Newell on Slander, 43; Cevery v. Daily News Co., 139 Ill. 345.

The imputation of the publication in the case at bar is, to our minds, not at all doubtful.

It is, the appellant procured certain persons to subscribe for a book, by representing to such persons the Federation of Labor was promoting and was interested in the enterprise of selling the book, and she was acting in the matter as its agent or representative, while in truth the Federation of Labor had nothing to do with the business of selling the book and was not interested in the enterprise in which she was engaged, and her representations it had, and she was its agent, were false, and but part of a clever swindle practiced by her to procure such persons to agree to buy the book by inducing them to believe it was being sold in the interest of the cause of organized labor, and that such persons were induced to sign contracts to buy the books by the methods thus employed by her. Such is the unmistakable meaning of the published article giving the words and phrases used common acceptation and import. The assertion, it is believed the Federation of Labor had nothing to do with the enterprise, is equivalent to a direct statement to the same effect. Miller v. Miller, 8 Johns. (N. Y.) 74; Bocker v. State, 14 Southern Rep. 562.

It is a misdemeanor involving moral turpitude, under the provisions of section 96 of the criminal code, to obtain the signature of another to any written instrument by false pretenses with intent to cheat and defraud the person whose signature is so obtained.   The publication alleges the buyers of the books signed contracts, meaning of course written instruments.

A written subscription for or to a book is a written contract to accept and pay for a book when delivered, or upon stated terms and conditions.   Black, Law Dictionary, 1131.

If accepted it becomes a legal obligation, and may be enforced in courts of law; is the subject-matter of forgery (People v. Matt, 34 Mich. 80), and is a " written instrument " within the meaning of these words as used in the criminal code.

The publication, we think, imputed to the appellant the statutory crime of obtaining signatures to written instruments by false pretenses, and if that be true, it follows the demurrer to the first and second count should have been overruled.

The charge in the third count is, it was intended by the publication to impute to and charge the appellant with designedly having used dishonest methods, and with cheating and defrauding others in the prosecution of her business of canvassing for subscribers to a book.

The publication bears this interpretation, and we think a good cause of action is set out in the third count.

In the view we are constrained to take, the judgment must be reversed and the cause remanded with directions to the court to overrule the demurrer and require the appellant to plead to the declaration.