## CRONIN *v.* ZIMMERMAN.

[No. 6,323.    Filed June 10, 1909.]

1. LIBEL.—*Robbery.*—The publication of a false charge against a young woman that she disguised herself as a man, wore a mask, entered a student's room, compelled him at the point of a revolver to deliver his money, that she took it and disappeared, that she admitted the truth of the account but called the transaction a joke, and that she had theretofore offered herself as a sacrifice to prevent the punishment of a certain Roman Catholic priest charged with murder, is libelous. p. 119.

2. LIBEL.—*Definition.*—Libel is a malicious defamation of the character of a person, expressed by writing, print, pictures, or the like. pp. 120, 121, 122.

3. LIBEL.—*Criminal Law.*—*Damages.*—A libel constitutes a crime, as well as a ground for an action in damages. p. 121.

4. LIBEL.—*Commission of Crime.*—A false written or printed accusation of crime against another or anything that tends to injure and blacken his reputation, constitutes libel. p. 121.

From Lake Circuit Court; *John B. Peterson,* Special Judge.

Action by Bessie Cronin against Arthur F. Zimmerman. From a judgment for defendant, plaintiff appeals. *Reversed.*

*Bessie Cronin, pro se.*

*Johnston & Bartholomew,* for appellee.

WATSON, J.—This was an action for libel. A demurrer to the complaint for want of facts was sustained. Appellant assigns the sustaining of such demurrer as error.

The complaint, omitting the formal parts, is as follows: "The plaintiff, Bessie Cronin, complains of the defendant, Arthur F. Zimmerman, and states that said defendant, contriving, and wickedly and maliciously intending, to injure this plaintiff in her good name and credit, and to bring her into public scandal and disgrace among her neighbors and other good and worthy citizens, and to cause it to be suspected and believed by such neighbors and citizens that this plaintiff had been guilty of the offense and misconduct hereinafter mentioned to have been charged against her by said defendant, and to vex and harass her, did, on August 9, 1903, at the city of Valparaiso, Porter county, Indiana, falsely, wickedly, maliciously, purposely and unlawfully compose and publish, and cause and procure to be published, in a newspaper called The Indianapolis Star, a newspaper published in Marion county, and circulated in Porter county and throughout said State, of and concerning this plaintiff a false, scandalous, defamatory and libelous matter, as follows:

'STUDENT HELD UP BY AN ARMED GIRL. MISS BESSIE CRONIN OF VALPARAISO USES A REVOLVER, BUT CALLS IT A JOKE.

(By Star Special Service.)

Valparaiso, Indiana, August 9.—Dressed as a man, with her face covered with a black mask, Miss Bessie Cronin, a member of the class of Valparaiso College, last night entered the room of one of the students of the institution, and at the point of a revolver compelled him to turn over all the money in his possession. Then threatening the student with dire vengeance if he attempted to follow, the girl vanished. The affair was reported to the police to-day, and an investigation revealed the fact that Miss Cronin was responsible. She admitted that she was guilty, but insisted that the affair was a joke. The authorities have taken no action in the matter yet. This is the second bid made by Miss Cronin for notoriety. Last May, at the time Father Walser, the Catholic priest was being held at Lorain, Ohio, on charges of murdering Agatha Reichlin, Miss Cronin wrote to Mayor King, of Lorain, Ohio, saying ''If you continue to prosecute the Rev. Mr. Walser, and persist in your efforts to shed his innocent and holy blood, I beg of you to allow me to come to Lorain and offer myself as a sacrifice.'' '

''That by reason of said publication of said false and defamatory matter, this plaintiff has been, and still is, greatly injured in her name and credit, and has been brought into public scandal and disgrace among her neighbors and citizens of said city, and other cities throughout the United States, where said paper is circulated, to the damage of plaintiff in the sum of $100,000.''

A libel has been defined as a ''malicious defamation expressed either by writing or printing, or by signs, pictures, effigies, or the like, tending to blacken the memory of

2.     one who is dead, or to impeach the honesty, integrity, virtue, or reputation, or publish the natural or alleged defects, of one who is alive and thereby expose him to public hatred, contempt, ridicule, or obloquy; or to cause him to be shunned or avoided, or to injure him in his

office, business, or occupation." 18 Am. and Eng. Ency. Law (2d ed.), 861.

3. Libel both at common law and under the statute is a crime, and the offender may be prosecuted civilly or criminally.

At common law any publication is a libel which degrades and injures another person, or brings him or her into contempt, hatred or ridicule, or which accuses him or 2. her of a crime, punishable by law, or of an act odious and disgraceful in society. The penal code of this State defines a libel to be a malicious publication by a person of "any false charge of and concerning another, accusing such other person of any crime, or of any degrading or infamous act." §2258 Burns 1908, Acts 1905, p. 584, §369.

"Any publication that tends to degrade, disgrace, or injure the character of a person, or bring him into contempt, hatred, or ridicule, is as much a libel as though it contained charges of infamy or crime." *Johnson* v. *Stebbins* (1854), 5 Ind. 364. See, also, *Commonwealth* v. *Clap* (1808), 4 Mass. 163, 3 Am. Dec. 212; *White* v. *Nicholls* (1845), 3 How. (U. S.) 266, 11 L. Ed. 591. Nor is it necessary that a crime be charged in precise or technical language in the written or published communication in order that such publication be libel.

Any false and malicious publication, when written or printed, which charges an offense punishable by indictment, or whatever tends to injure a person and black-4. en his reputation, or whatever imputes fraud, dishonesty or other moral turpitude, or reflects shame, or tends to put him without the pale of social intercourse, constitutes libel. *Johnson* v. *Stebbins, supra; Crocker* v. *Hadley* (1885), 102 Ind. 416; *Prosser* v. *Callis* (1889), 117 Ind. 105; *Patchell* v. *Jaqua* (1893), 6 Ind. App. 70; *Hamilton* v. *Lowery* (1904), 33 Ind. App. 184; *Kenney* v. *Illinois State Journal Co.* (1895), 64 Ill. App. 39; *Schomberg* v. *Walker* (1901), 132 Cal. 224, 64 Pac. 290.

It will be seen that the authorities, not only of this State, but of other states, are to the effect that any publication which tends to hold a person up to scorn or ridicule is defamatory and libelous. The question before us is,

Do the words published concerning this plaintiff, furnished by this defendant for a newspaper of wide circulation, have a tendency to bring her into public contempt or ridicule?

It is averred that this publication is false, and that it was wickedly and unlawfully published concerning her, which greatly injured her name, and brought her into public scandal and disgrace among her neighbors.

We are construing this publication complained of as tested by demurrer, and in so doing, measured by the rules heretofore laid down, we hold that it was libelous. There can be no doubt of its tendency to injure the reputation of this plaintiff, bring her into scandal and disgrace, and destroy the confidence of the public in her honesty and integrity.

The judgment is therefore reversed, with instructions to the trial court to overrule the demurrer to the complaint, and proceed herein consistently with this opinion.

Judgment reversed.