[S. F. No. 1811.   Department Two. — March 14, 1901.]

## HENRY SCHOMBERG, Appellant, v. W. S. WALKER, Respondent.

Libel per Se — Construction of Code — Common-law Rule — Burden of Proof. — The definition of libel in our code is but a statement of the common-law rule, that any words will be presumed defamatory, or libelous *per se*, which expose the plaintiff to hatred, contempt, ridicule, or obloquy, or which tend to injure him in his profession or trade, or to cause him to be shunned or avoided by his neighbors.   The words, "false and unprivileged," used in the code, do not materially change the common-law rule; but the burden of proving the truth of the libel, or the privilege claimed, lies upon the defendant, as at common law.

Id. — Statutory Definition — Language Fairly Included. — Language fairly included in the statutory definition of libel, is libelous *per se.* It is only where the meaning is *covert* that averment and proof of special damage is required.

Id. — Charge against Town Trustees — "Ring" — Corrupt Combination with Bidder. — A published charge against town trustees, that they had treated the citizens "in a most contemptible, illegal, and unjust manner, and unworthy of a body of citizens elected to look after the best interest of our little town," and implying that they had formed a "ring," or combination for improper purposes, and specifically charging them with a corrupt combination with a successful bidder for a culvert, is defamatory, and libelous *per se*, in the absence of a showing of justification or privilege.

Id. — Express Malice Shown — Pleas of Justification and Privilege not Sustained. — Where there was no attempt to prove the truth of the published report, and its unfairness clearly appears on the face of the publication, and there was proof of express malice in the republication of the libel and otherwise, pleas of justification and privilege are not sustained.

Id. — Privilege Provable under General Issue. — It is not necessary to plead the defense of privilege; but it is competent for the defendant to show, under the general issue, that the alleged libel was privileged, or published on some lawful occasion.

Id. — Privilege to Comment on Public Matters, how Limited. — The privilege of a citizen to comment on matters of public interest, or the proceedings of public officers, is limited by the condition that "he does so fairly and with honest purpose"; and where the publication is unfair and defamatory, and there is ample and uncontradicted evidence of express malice, the case does not come within such privilege.

Id. — Incompetent Evidence — Reputation of Plaintiff — Non-injury from Libel. — It was error to allow the defendant to prove, over the objections of the plaintiff, that plaintiff's standing and reputation in the community were in fact not deleteriously affected by the libel.

Id. — Exemplary Damages — Question for Jury — Refusal of Instruction. — The question of damages, and whether they should be exemplary or otherwise, is for the jury; and an instruction requested by the plaintiff, that upon failure of the defendant to sustain his plea of justification, plaintiff would be entitled to exemplary damages, was properly refused.

APPEAL from a judgment of the Superior Court of Santa Clara County and from an order denying a new trial. W. G. Lorigan, Judge.

The facts are stated in the opinion.

W. C. Kennedy, and Will M. Beggs, for Appellant.

William P. Veuve, for Respondent.

SMITH, C.—Appeal from a judgment for the defendant and from an order denying a new trial. The suit was for libel, published in the defendant's newspaper, reflecting on the plaintiff as one of the board of trustees of the town of Los Gatos. The article complained of is as follows:—

"ring, ring, ring.

"*Mr. Editor,*—With permission to encroach on your valuable space, I would state to the taxpayers of Los Gatos there are many kinds of Rings; the most interesting to the recipient, I presume, is the engagement Ring, especially so if it be a diamond; then there is the marriage Ring, and Rings worn in the nose and in many other ways. Now, I think the board of trustees had the *Wring* in the nose of the taxpayers last Monday night, in a most contemptible, illegal, and unjust manner, and unworthy of a body of citizens elected to look after the best interest of our little town.

"The facts are these: The town clerk advertised for bids to build a certain culvert, the bids to be in at the town hall by five o'clock on Monday last. The august *Wringers* met and awarded the contract to the lowest bidder about nine P. M. on Monday night; the material for the said culvert was at the Los Gatos depot by five o'clock, A. M., Tuesday.

CXXXII. Cal.—15

"Now, this looks as if the Wring was well twisted, as Mr. Sylvester, the contractor, must have known long before the board met that the contract was his, as it was impossible, after nine P.M. on Monday night, to order the lumber, load it on the car, and get it here next morning by five o'clock.

"Can our City Wringers explain this unjust and discriminating action to the people of Los Gatos? If a re onable explanation is not forthcoming, I will add my mite with others to prevent the payment of any bill contracted so illegally.

"JUSTICE."

It is alleged in the complaint that the article was published of and concerning the plaintiff (Code Civ. Proc., sec. 460); and that this was the case, appears from the fact that of the five trustees constituting the board, only three, including the plaintiff, participated in the award of the contract. It is claimed by the appellant that the article published is libelous *per se*, and that, in the absence of justification, he was entitled to a verdict for at least nominal damages. If so, he is now entitled to a reversal. (*Lick* v. *Owen*, 47 Cal. 252; *Taylor* v. *Hearst*, 107 Cal. 262.) The question involved, then, is, whether the publication is or is not a libel *per se*.

The definition of libel in our code is taken from Field's New York Civil Code (sec. 29), and is but a statement of the common-law rule as given in the cases there cited. (2 Kent's Com. 17; *Stone* v. *Cooper*, 2 Denio, 293; *Cooper* v. *Greeley*, 1 Denio, 347; *Steele* v. *Southwick*, 9 Johns. 214.) The effect of these and other cases is thus stated—almost in the language of the code—by Mr. Odgers: "In cases of libel, any words will be presumed defamatory which expose the plaintiff to hatred, contempt, ridicule, or obloquy, which tend to injure him in his profession or trade, or to cause him to be shunned or avoided by his neighbors." (Odgers on Libel and Slander, sec. 21; *O'Brien* v. *Clement*, 15 Mees. & W. 435; *Crop* v. *Tilney*, 3 Salk. 226; *Villers* v. *Mously*, 2 Wils. 403.) There is indeed an apparent difference between the code definition and the older definitions, in the use, by the former, of the words, "false and unprivileged," as descriptive of a libelous publication; but this language does not materially change the rule. The burden of proving the truth of the libel, or the privilege claimed, still lies on the defendant, as at common law. (Newell on Slander and Libel, secs. 71, 72; Odgers on Libel

and Slander, sec. 169; *O'Brien* v. *Clement*, 15 Mees. & W. 435.) The difference is therefore merely verbal. According to the old definition, a libel may be justified by proving its truth, or that it is privileged; under the code definition, the publication, if it can be thus justified, is not a libel. Under either point of view, therefore, it will be necessary to consider separately the question as to the general character of the publication and the question as to its justification.

1. The first question to be considered, therefore, is, whether, in the absence of justification or privilege, the publication complained of is, in itself, a libel; and this, I think, must be determined affirmatively. Where there is a statutory definition,—it has been said by this court,—"language which is fairly included in such definition is libelous *per se*. It is only when the libelous meaning of the publication is *covert*— not apparent on the face of the language used—that averment and proof of special damage is required." Our code defines libel as follows: "Libel is a false and unprivileged publication, by writing, pictures, effigy, or other representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." (Civ. Code, sec. 45.) This definition is very broad, and includes almost any language which, upon its face, has a natural tendency to injure a man's reputation, either generally or with respect to his occupation. (*Tonini* v. *Cevasco*, 114 Cal. 271, 272.) In the case cited the gist of the libel was, in effect, that the plaintiff had "been discharged from the firm of G. B. Cevasco & Co. for conduct not irreprehensible." The case here is much stronger, and the observation of the court (p. 273), with the authorities cited, must be held equally applicable here. "It cannot be justly said that the language does not import anything of a defamatory character concerning the plaintiff. (See *Bettner* v. *Holt*, 70 Cal. 270; *Lick* v. *Owen*, 47 Cal. 252; *Edwards* v. *San José etc. Society*, 99 Cal. 431; 37 Am. St. Rep. 70; *Fitch* v. *De Young*, 66 Cal. 339.)"

To constitute a libel, it is not necessary that there be a direct and specific allegation of improper conduct, as in a pleading. The charge may be either expressly stated or implied; and in the latter case the implication may be either apparent from the language used, or of such a character as to require the statement and proof of extrinsic facts (*inducement, colloquium,*

and *innuendo*) to show its meaning. In the last case, proper allegations and proofs of the facts necessary to make the meaning of the language apparent will be required. Otherwise, whether the charge be directly made or merely implied, the publication— without *averment, colloquium,* or *innuendo* —will, in itself, constitute a libel. "The construction which it behooves a court of justice to put on a publication which is alleged to be libelous is to be derived as well from the expressions used as from the whole scope and apparent object of the writer." (*Cooper* v. *Greeley,* 1 Denio, 358.) Thus in the case cited, the charge was not "made in an open and direct manner"; "but," it was said by the court, "an imputation made in that form is not the less actionable." So in the case of *Steele* v. *Southwick,* 9 Johns. 214,— where the charge was not direct,—it was said: "If the words do not import perjury in the legal sense, they hold the plaintiff up to contempt and ridicule, etc. . . . In this view the words are actionable, for a writing published maliciously, with a view to expose a person to contempt and ridicule, is undoubtedly actionable; and what was said to this effect by the judges of the C. B. in *Villers* v. *Mensley* (Wils. 403) is founded in law, justice, and sound policy. . . . To allow the press to be the vehicle of malicious ridicule of private character would soon deprave the moral taste of the community, and render the state of society miserable and barbarous."

The libel charged in this case not only expressly avers that the trustees referred to— of whom the plaintiff was one— had in some way treated the citizens in a manner "most contemptible, illegal, and unjust, . . . and unworthy of a body of citizens elected to look after the best interests of [the] town," and that their action was "unjust and discriminating," but it charges them, by implication, as plainly as though it were directly alleged, with constituting, or being members of, a "ring,"—by which, as used in the context, must be understood, according to the most obvious and familiar sense of the term, a combination for illegal or otherwise improper purposes (*Edwards* v. *Pub. Soc.,* 99 Cal. 435, 436[1]), and also, specifically, with being guilty of a corrupt combination with the successful bidder. There can be no doubt, therefore, of the libelous character of the publication.

---

[1] 37 Am. St. Rep. 70.

2. Two affirmative defenses are set up in the answer, which may be conveniently referred to as a plea of justification and a plea of privilege. The former is to the effect that the article is "a true and fair report" of the proceedings referred to, published "without malice." (Civ. Code, sec. 47, subd. 4.) The latter consists of the single allegation "that the said publication was and is true." But, beyond the admitted fact that the award of contract and the proceedings connected therewith were correctly stated, no evidence was offered to prove the truth of the charges made. The plea of justification must therefore be regarded as unsupported by the evidence. And for the same and other reasons the plea of privilege must also be so regarded. For not only was there no attempt to prove the truth of the so-called report, but its unfairness clearly appears on the face of the publication; and there was evidence — in the republication of the libel and otherwise — of express malice. (Civ. Code, sec. 47, subd. 4; Odgers on Libel and Slander, sec. 272; *Chub* v. *Westley*, 6 Car. & P. 436; Newell on Slander and Libel, secs. 349, 350, and cases cited.) The defendant's case is therefore not aided by either of his pleas.

It was, however, competent for the defendant to show, under the general issue, that the alleged libel was privileged, or as otherwise expressed, that "it was published on some lawful occasion." (*O'Brien* v. *Clement*, 15 Mees. & W. 437.) It remains, therefore, to be considered whether, on the evidence, such a claim can be maintained. The theory of the defense on this point is, that the proceedings referred to in the article were correctly reported, and that the rest of the publication was merely a comment upon them, which the writer, as a citizen, had a right to make, and the defendant to publish. The privilege thus claimed, if it can be sustained at all, must—it would seem—rest upon the provisions of subdivision 3 of section 47, and section 48 of the Civil Code, as none of the other provisions of the former section can apply to the case. But these provisions would seem to include within their intent the familiar doctrine of the right of the citizen "to comment on matters of public interest and general concern" (Odgers on Libel and Slander, secs. 34, 38, 39); for the writer of a communication commenting on such matters, as well as each member of the community to whom it is addressed, comes within the description of "a person interested therein"; and it cannot be supposed it was the intention to alter the law in this

respect. But the right of the citizen to comment on the proceedings of public officers is limited by the condition that "he does so fairly and with honest purpose," and that the line be observed "where defamation commences [and] true criticism ends." (Odgers on Libel and Slander, secs. 34, 36; Newell on Slander and Libel, secs. 564, 567, 569.) The case, therefore, does not come within the privilege claimed. For here there was ample and uncontradicted proof of express malice. The defendant, as he himself testified, understood the injurious effect and intent of the article, and yet made no inquiry, in advance of publication, either of the writer or others, as to the truth of the charges made. The facts stated in the article were not of a character to excite even a suspicion of improper conduct on the part of the trustees. The proceedings were regular, and the only additional fact was the arrival of certain materials on the next morning. But this is explained by the testimony of Lyndon, by whom they were ordered. The successful bidder, Syverson, had no connection with them; and it is not even asserted, directly, that they had been ordered by him. There was nothing in the fact, either as it was, or as it was supposed to be, to justify the grossly vituperative epithets applied to the trustees. The defendant made no subsequent inquiry as to the justice of the charges, or if he did, failed to retract them. On the contrary, after full time for examination and reflection, he republished the libel with injurious comments, and again, in his answer, reiterated the libel and asserted its truth. (Odgers on Libel and Slander, sec. 178.) From these facts the inference of actual malice is irresistible.

Other points made by the appellant are, that the court erred in allowing defendant's witnesses to testify, over his objections, that the plaintiff's standing and reputation in the community were in fact not deleteriously affected by the libel; and that the court erred in refusing to instruct the jury, at his request, that upon a plea of justification and failure of proof to sustain it, the plaintiff would be "entitled to exemplary damages." The admission of the testimony objected to was erroneous. (*Titus* v. *Sumner*, 44 N.Y. 266; *Herrick* v. *Lapham*, 10 Johns. 280.) The instruction was rightly refused. The question of damages, and whether they should be exemplary or otherwise, was for the jury. (*Childers* v. *San José Mercury etc. Co.*, 105 Cal. 285.[2])

[2] 45 Am. St. Rep. 40.

I advise that the judgment and order appealed from be reversed and the cause remanded for new trial.

Haynes, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are reversed and the cause remanded for a new trial.      McFarland, J., Temple, J., Henshaw, J.