[Civ. No. 1976.  Third Appellate District.—May 15, 1919.]

W. N. SLEDGE et al., Respondents, v. H. F. STOLZ et al., Defendants; TUOLUMNE DEEP CHANNEL MINING COMPANY (a Corporation), Appellant.

[1] APPEAL — JUDGMENT-ROLL — PRESUMPTIONS.—Where an appeal is taken on the judgment-roll alone, all intendments are in favor of the regularity of the action of the trial court. Error will never be presumed, and the burden is upon the appellant to show that it exists.

41 Cal. App.—14

[2] Deeds—Consideration—Contemporaneous Agreement—Construction.—Where a deed is executed and delivered pursuant to a given agreement, the court must look to such agreement to ascertain the consideration for the execution of the deed. The two instruments are inseparable.

[3] Id.—Agreement to Work Mine—Implied Obligation—Failure to Perform—Remedy of Grantor.—Where the sole consideration for the purchase of a mine takes the form of a royalty resulting from the working of the mine, there is an implied obligation on the part of the grantee to work the mine to the end that the consideration may be paid, failing in which the grantor may have the property restored to himself.

APPEAL from a judgment of the Superior Court of Tuolumne County. G. W. Nicol, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. S. K. Brown for Appellant.

Grant & Zimdars and Wm. H. Bryan for Respondents.

CHIPMAN, P. J.—This is an action tried by the court without a jury to have a decree declaring that plaintiffs are the owners of certain mining claims free and clear from any rights acquired by defendants or any of them thereto, under the certain agreement and deed mentioned in the complaint.

A general demurrer to the complaint was overruled and defendants answered and went to trial on the merits. Findings of fact were in favor of plaintiffs and judgment was entered in accordance therewith. Defendant, Tuolumne Deep Channel Mining Company (hereinafter referred to as the Mining Company), appealed from the judgment on the judgment-roll alone.

It is alleged in the complaint that, on August 30, 1912, plaintiffs were the owners of certain described mining property situated in Tuolumne County and, on that day, entered into a written agreement with defendants, H. F. Stolz and J. Cabell Brown, relative to said mining claims, which is attached to the complaint as exhibit "A" and made part thereof; that, agreeably to paragraph VI of said exhibit "A," plaintiffs executed a deed of grant of said property and placed the same in escrow with the First

National Bank of Sonora with instructions as provided in said sixth paragraph of said exhibit "A," which said deed was, prior to November 21, 1914, delivered to said defendants, Stolz and Brown; that, after August 30, 1912, and prior to January 1, 1916, said defendants, Stolz and Brown, transferred to defendant, said Mining Company, "all their right, title, and interest under said contract exhibit 'A,' and all their right, title, and interest of in and to the real property described in this complaint"; it is then alleged, paragraph VI, "that nothing was done by the defendants, or any of them, on said real property in accordance with the terms of the said agreement, exhibit 'A' and the deed made pursuant thereto, or otherwise, or at all, excepting as follows": then follows a statement of the work done, consisting of assessment work in 1913 and 1914; also certain drilling and prospecting on said claim which "commenced in May, 1914, and continued to November, 1914, and then ceased," and no other work was done until in September, 1915, and continued until December, 1915, which work was performed by three men and no more, since which time no work of any kind has been done on said property; that plaintiffs have frequently, during the year 1916 and prior to filing the complaint (which was July 3, 1916), demanded of said defendants, "under penalty of forfeiture of all rights in said property for failure so to do that they do proceed and perform work on said premises as contemplated and as provided for by the said agreement exhibit 'A' and the deed made pursuant thereto, but said defendants have refused and failed, and each of them has refused and failed to perform any work on said premises since December, 1915, of any kind," and that plaintiffs notified said defendant that a "failure so to do would result in a forfeiture of all their rights of in and to said property, and of in and to said contract, exhibit 'A' "; that nothing has been paid to plaintiffs as profits derived from working said mine and defendants have and each of them has "completely violated the terms and conditions of said contract, exhibit 'A' and the deed of conveyance made pursuant thereto in failing to work said mine as provided by the terms of said contract"; that defendants, other than said above-named defendants, claim to have some interest in said property, but "all of said rights

and claims are subordinate to the right and ownership of these plaintiffs of in and to said property.''

The consideration mentioned in exhibit ''A'' is five dollars ''and for and in consideration of the covenants and conditions hereinafter contained to be by the respective parties hereto kept and performed.'' By paragraph 4, the parties of the second part (Stolz and Brown) were let into possession of the mine ''for the purpose of prospecting and drilling the same to ascertain what if any valuable mineral bearing earth, ore or rock, or placer gold, lie within, upon or under the said property''; that if it proved ''to the satisfaction of the parties of the second part that there is insufficient mineral bearing earth . . . to warrant . . . developing or operating'' the agreement was, upon written notice to first parties, ''to be of no further force or effect,'' but if found satisfactory by second parties after drilling and prospecting the mine, they were to continue the work and ''shall pay over and deliver unto the said parties of the first part, or to W. N. Sledge who for that purpose is hereby constituted the agent of the parties of the first part, twenty-five per cent of the net profits derived from the working of all mineral bearing earth . . . by the parties of the second part,'' which was to be paid immediately after each clean-up, which latter ''shall take place not less than twice in each calendar year.'' Paragraph 6, referred to in the complaint, provided: ''That the parties of the first part will, contemporaneously with the execution and delivery of this agreement, make and execute a good and sufficient grant, bargain and sale deed of the above described mining claims and property, which said deed shall be deposited with the First National Bank of Sonora, in the town of Sonora, state of California, with instructions to said bank to deliver said deed to the parties of the second part as soon as said parties of the second part shall have expended the sum of five thousand dollars in prospecting, drilling, developing and working said mining claims and property, and the production of a writing signed and sworn to by the parties of the second part, or by either of them, setting forth that said sum has been so expended, or by the production and exhibition to said bank of satisfactory proof of such expenditure, shall be full authority to said bank for the delivery of said deed by it to the parties of the second part, and in such

event said bank is hereby instructed to deliver said deed as hereinabove provided." The agreement then provides what shall be regarded as expenses to make up this five thousand dollars: "Provided, however, that said deed after its delivery by said bank shall in no way interfere with the right of the parties of the first part to receive one-fourth of the net profits derived from the working of said claims and property thereafter, nor avoid the obligation of the parties of the second part to make such payments." Paragraph 8 provides that second parties shall commence said work of drilling, prospecting, and working said mine within one year from the date of the agreement, and that "the actual work of development, and operation shall be commenced by said parties of the second part within two years from and after the date hereof, and shall diligently continue and prosecute such work until such time as said parties of the second part shall determine in their sole judgment" that further work is not profitable, "in which event this agreement shall be of no further force or effect, and any rights hereunder, except those which shall have already vested, shall cease and determine."

Defendants answered: Admitted the execution and delivery of said exhibit "A" and said deed mentioned in the complaint; denied that nothing was done by defendants in accordance with said exhibit "A" and said deed made pursuant thereto and denied other averments relating to the alleged ceasing of work; denied that any demand had been made upon defendants to perform the work contemplated by said agreement, under penalty of forfeiture or otherwise; alleged that defendants were let into possession in May, 1914, and thereupon commenced and continued to work said mine until November 21, 1914, when defendants, Stolz and Brown, transferred their interest in said contract and deed to defendant, said Mining Company, and that thereafter said Mining Company prosecuted said work, describing the work done; defendant, said Mining Company, alleged that since the passing of said deed to defendants, Stolz and Brown, said Mining Company has fully performed "all things required of it or of its said predecessors in interest to be done under the terms of said agreement exhibit 'A'"; alleged that plaintiffs had full knowledge of the work being done and at no time objected thereto and

the manner in which the work was being done and by their conduct led defendants to believe that plaintiffs had excused defendants "from strict performance as to time and manner of the covenants contained in said agreement"; that defendants have not abandoned said work nor have they any intention of so doing; alleged that, in June, 1916, plaintiffs notified defendants to proceed with the work within ten days or suffer forfeiture and that thereupon said Mining Company "immediately proceeded with its preparations to continue said work of development," describing the work which followed. In paragraph VI defendants alleged that the said deed "is freed of conditions, and that said deed does not require any work to be done upon the premises herein involved by these defendants or by any of them; and alleged further, that said defendants have never at any time or at all, nor did any of them, nor do they or any of them now, deny the right of said plaintiffs to receive twenty-five per cent of the net profits derived and to be derived from the working" of said mine, "as provided in said agreement exhibit 'A' ''; alleged that at the time defendants took possession of said mine said property "consisted of dry and naked mining locations upon part of the public domain, of nominal, uncertain, and indeterminate value," but that by the work done thereon by defendants "said mining ground has been proved to be of great value, to wit: one hundred thousand dollars," and that defendants' vested property rights therein are of the actual value of seventy-five thousand dollars.

The court made the following findings of fact: That, on August 30, 1912, plaintiffs were the owners of the mining claims referred to in the complaint and on said day entered into the written agreement with defendants, Stolz and Brown, of which a copy is found in the complaint; "that at the same time and in accordance with the provisions of said agreement, plaintiffs made and executed an instrument in writing in the form of a deed of grant, bargain, and sale of said properties, which writing in terms recited the following [refers by way of preamble to the agreement for prospecting and working the said mining claims; recites the provision of the agreement as to placing a deed to the property with the First National Bank, at Sonora, as shown in said agreement, with instructions to deliver the same to said

Stolz and Brown upon their compliance with the conditions of said agreement] ; and whereas it was agreed under the terms of said agreement that the making, executing and delivering of this deed shall in no way affect the rights of the parties of the first part hereto [plaintiffs] to receive from said parties of the second part twenty-five per cent of the net profits derived from the working and operating of said mining claims and property'' (except said preamble no part of the deed is set forth in the findings or in the pleadings) ; that, prior to November 21, 1914, said bank delivered said deed upon there being filed with said bank an account of expenditures, as provided in said agreement, setting forth some of the items constituting said expenditures; that, after August 30, 1912, and prior to January 1, 1916, defendants, Stolz and Brown, transferred to defendant, Mining Company, all their interest in and title to said mining claims under said agreement and said deed. Finding VI is as follows: ''That at no time after the execution of said agreement, did plaintiffs or either of them in any way hinder or prevent defendants or any of them from entering upon the said property or doing the work as contemplated in the said agreement; but that said defendants and each and all of them have failed to do any work upon said property or in connection therewith or therefor during the period from the execution of said agreement and up to the time of the filing of the complaint in this action, except the following, viz.'' The work described consisted of assessment work in 1913, not exceeding the sum of five hundred dollars, and certain borings, in 1914 and 1915, of the cost or value of $2,445, for prospecting purposes; that, ''during the year 1916 and up to July 1, 1916, the date of the commencement of this action, defendants performed no work whatever upon or in connection with said properties''; that after July 1, 1916, and to the last day of the trial, September 7, 1917, the only work done consisted of some tunneling of an unsubstantial and temporary nature, some road work and surveying not exceeding in value the sum of five hundred dollars. Finding VII refers to the provision of said agreement, exhibit ''A,'' requiring defendants to commence the work of drilling, prospecting, etc., within a certain time ''and to diligently continue and prosecute such work'' until defendants should determine it to be no longer profitable; ''that de-

fendants, or any of them, did not, in their sole judgment, or otherwise, determine that the further working or development of said claims and property was not profitable; but, on the contrary, defendants have always claimed and did determine to their satisfaction that the further working or development of said claims and property would be profitable." Finding VIII is that plaintiffs made demand of defendants that they proceed to perform work as required by said agreement and deed and defendants' failure to do so as alleged in the complaint. Finding IX is as follows: "That the only consideration to plaintiffs, or either of them, for the execution and delivery of said agreement and said instrument in form of a deed were the agreements made by the parties of the second part therein and thereby to prospect and work the said properties so that plaintiffs would receive a return therefrom in the form of the royalty therein provided for; and that plaintiffs, or either of them, have not received anything whatever from defendants, or any of them, resulting from the prospecting or working of said properties, or any of them, or otherwise"; that defendants "have wholly and completely violated the terms and conditions of said contract, exhibit 'A,' and the deed of conveyance made pursuant thereto in failing to work said property as provided by the terms of said contract." Finding X is to the effect that plaintiffs did not excuse defendants or any of them from performing the said work nor did plaintiffs do anything to lead defendants to believe that plaintiffs were content or satisfied with the work being done by defendants. "That defendants claimed that they did not perform other or more work because they did not have the necessary moneys so to do; and after the delivery to them of said instrument in form of a deed defendants claimed to plaintiffs that defendants were not required to do any work under said agreement or said instrument in the form of a deed; and defendants thereafter repudiated any and all obligations on their part to do any work on said properties, or any of them, or in connection therewith after the delivery to them of said instrument in the form of a deed." Finding XI states as follows: "That as a result of said previous work of plaintiffs and of said borings and other prospecting by defendants, it has been determined that the said properties contain a gold-bearing gravel chan-

nel, which can be profitably worked and mined by proper methods therefor, but that the actual money value of said properties has not been determined with any definiteness, and the same is problematical." Finding XII is: "That the execution of said agreement and of said instrument in form of a deed and their deliveries constituted one and the same transaction. That the consideration to plaintiffs for the execution of said agreement and said instrument in form of a deed and their deliveries was the performance of the work as specified in the said agreement so that plaintiffs might receive the profits from such work, and that the delivery of the instrument in form of a deed did not in any way alter the obligation of the defendants to perform the said work in the manner and at the times as provided for in the said agreement so that the plaintiffs could receive their consideration therefor; and that said defendants received or acquired no rights under said instrument in form of a deed which in any way relieved them of the obligation to perform said work as provided for in said agreement; and that the work that defendants did upon said properties amounted only to prospecting work, and that they did no mining work whatsoever looking towards the extraction of mineral therefrom in a manner that might result in plaintiffs receiving any payment or consideration for the execution and delivery of said agreement and said instrument in form of a deed; and that defendants have repudiated their obligation to do any of the work specified in said agreement, since the delivery to them of said instrument in the form of a deed."

Appellant states in its reply brief that "the sole question before the court is, Does the complaint state a cause of action and can the judgment based on it stand in law?" Accordingly, appellant's argument is directed exclusively to the sufficiency of the complaint.

Appellant overlooks the fact that the judgment-roll discloses the result of the trial as shown in the findings of fact which constitute the real foundation of the judgment. [1] Appellant also ignores certain well-established rules governing appellate courts where the appeal is on the judgment-roll alone. It may not be amiss to recall some of these rules. "On appeal all intendments are in favor of the regularity of the action of the court. Error will never be pre-

sumed and the burden is upon the appellant to show that it exists." (2 Haynes on New Trial, p. 1576.) In *Myers* v. *Canepa*, 37 Cal. App. 556, [174 Pac. 903, 906], appellants claimed that the rule does not reach an error committed in passing upon the sufficiency of a complaint where the question is raised by demurrer. In reply the court said: "Whatever may have been the interpretation put upon section 475 of the Code of Civil Procedure prior to the adoption of section 4½, article VI, of the constitution, it is settled that injury is no longer presumed from error, but must be affirmatively shown. (*Vallejo etc. R. R. Co.* v. *Reed Orchard Co.*, 169 Cal. 545, [147 Pac. 238].) The provision is: 'No judgment shall be set aside . . . for any error as to any matter of pleading, or for any error as to any matter of procedure, unless after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.' How can the court determine that defendants were injured by overruling the demurrer in this case in the absence of the record showing what occurred at the trial? It may have been that appellants consented to the trial upon its merits without objection to the evidence in support of the complaint, notwithstanding its defects. There may be presumptive waiver, which is a species of consent. As was said by Judge Hart, in the original opinion: 'In considering an appeal supported by the judgment-roll only, all presumptions and intendments are to be indulged favorably to and in support of the judgment. It must, in other words, be presumed that there was evidence sufficient to support the judgment or the verdict, and that, whatever might have properly occurred at the trial to cure the defects of the complaint in any vital particular, did actually occur.' " Said Judge Haynes: "If the judgment-roll does not, therefore, itself disclose the error complained of, it is incumbent upon the appellant to make a showing *dehors* such judgment-roll. This can be done in no other way than by a bill of exceptions, or in case of a new trial ordered, a statement." (2 Haynes on New Trial, p. 1576.) In the recent case of *Ransome-Crummey Co.* v. *Bennett*, 177 Cal. 560, [171 Pac. 304], the question was directly before the court where, as here, there was a trial upon the merits after general demurrer improperly overruled and judgment,

as here, on the findings, and it did not appear that the facts were such as that the complaint could not have been so amended as to obviate the objection made. The syllabus correctly states the rule as follows: "Though by omission of an allegation, a complaint does not state a cause of action, and general demurrer thereto was improperly overruled, yet the record making it manifest judgment for plaintiff after a trial on the merits, was in no way based on or due to any defect in the complaint, it will not be sustained on the ground of insufficiency of the complaint; it not appearing it cannot be amended to obviate the defect."

Appellant takes the position that the contract spoke from its date, August 30, 1912, but that the deed did not speak until the date of its delivery "and finally fixed in law the respective rights of the parties." The court found that the only consideration to plaintiffs for the execution and delivery of said agreement and deed was that plaintiffs were to receive a return from the workings of the mine "in the form of a royalty," as provided in said agreement, and "that the execution of said agreement and of said instrument in form of a deed and their deliveries constituted one and the same transaction"; and further, that "the delivery of the instrument in the form of a deed did not in any way alter the obligation of defendants to pay for the said work in the manner and at the times as provided for in the said agreement so that the plaintiffs should receive their consideration therefor." These two instruments were to be, and in fact were, executed contemporaneously. The fact that the deed was not to be delivered until after certain preliminary work was done did not, in our opinion, have the effect of putting to an end the provisions of the agreement, exhibit "A," nor was it intended to have any such effect. It is an unreasonable interpretation of the transaction "that the deed hereinbefore and in said complaint mentioned is freed from conditions, and that the said deed does not require any work to be done upon the premises herein involved by these defendants or by any of them," as alleged in the answer. The deed does not appear in the record and we know nothing of its provisions except as appears by way of preamble above set forth.

[2] We must look to the agreement to ascertain the consideration for the execution of the deed, for it was executed

and delivered pursuant to the agreement. The two documents are inseparable. **[3]** We think the transaction was one where the sole consideration for the purchase price took the form of a royalty resulting from the working of the mine. In such case there is an implied obligation on the part of the grantee to work the mine to the end that the consideration may be paid, failing in which the grantor may have the property restored to himself. The cases relied upon by appellant as supporting its contention that for breaches of conditions subsequent the grantors' remedy alone is for damages, do not apply here. In *Downing* v. *Rademacher,* 133 Cal. 220, [85 Am. St. Rep. 160, 65 Pac. 385], we have a case quite similar to the case before us, where, as here, an interest in a mine was conveyed by deed and contemporaneously a separate written agreement entered into by the parties wherein it was provided that the grantee was given the exclusive right to work and mine the mining claims and was required so to do and deliver to the grantor one-third of all the gold or other minerals taken from the mine. Said the court: "There is here no question of innocent purchasers without notice. The deed and the agreement constitute one instrument, and must be read as though each referred to the other and expressly incorporated its terms. And, in legal effect, what do they amount to? As between the parties, at all events, there is no such magic in a conveyance of a title in fee which can be used to do an owner out of his property. Under this contract and deed, all Downing acquired was the right to work the mine in his own way, on condition that he deliver to Rademacher one-third of the valuable minerals obtained. The conveyance was, in effect, subject to this condition." It was held that the sole consideration of the conveyance being for a share of the proceeds of the mine, the equities of the grantor are the same as if a conditional leasehold estate had been granted; that there is an implied obligation to work the mine, in order that the consideration agreed may be paid, and as the share of the grantor cannot be determined until the mine is worked out, the grant of the mine is conditional, for the protection of the grantor. Among other cases cited in the opinion is *Richter* v. *Richter,* 111 Ind. 456, [12 N. E. 698], mentioned as "directly in point." Explaining this case, Judge Temple said: "Rich-

ter executed to his son a warranty deed for a farm, for an expressed consideration of one thousand dollars. The real consideration was a contemporaneous agreement in writing, by the terms of which the son agreed to support his father so long as he should live. A few months afterward the son refused to perform this contract. After a demand for reconveyance, the father brought suit to compel it. The defense there was the same as here, that the consideration for the deed was the agreement, and the only remedy the father had was to sue upon it. The contract purported to be a mortgage, though the court held it could not be enforced as such. It was said: 'True, neither the deed nor the mortgage state in express terms that the estate is granted upon condition, but the word "condition" is not necessary to the creation of an estate upon condition, if it plainly appears from the words used that the intent of the parties was to create an estate of that description. (*Stillwell* v. *Knapper,* 69 Ind. 558, [35 Am. Rep. 240].) In the construction of deeds, as in construing other writings, courts seek to ascertain and give effect to the real intention of the parties, as such intention may be gathered from the language of the whole instrument. The intent is what the law applied itself to in deeds. (*Watters* v. *Br( 'n,* 70 Pa. St. 235.) If from the nature of the acts to be performed by the grantee, and the time required for their performance, it is evidently the intention of the parties that the estate shall be held and enjoyed on condition that the grantee perform the acts specified, then the estate is upon condition. This is especially so when the grantor has reserved no other effectual remedy for the enforcement of performance on the part of the grantee.' '' The principle involved in these cases was applied in *Acme Oil & Mining Co.* v. *Williams,* 140 Cal. 681, [74 Pac. 296], which was the case of the conveyance of a leasehold interest in oil lands where the sole consideration for the lease was a royalty of ten cents per barrel of the oil produced. It was held that "there was an implied covenant or condition for diligent operation of the wells to the best advantage of both parties, which is as effective as if expressed in the lease, and is of the essence of the contract; and for a substantial breach of such implied condition, the lessor may re-enter and claim a forfeiture of the lease." (Syllabus.) *McIntosh* v. *Robb,* 4 Cal. App. 484, [88 Pac.

517], was a mining lease case, the consideration being ten per cent by way of royalty of the net proceeds of any and all mining operations. The court said: "In contracts of this character there is an implied covenant for diligent search and operation," and the lessee is bound to proceed with mining operations with reasonable diligence. Cases are cited in support of this principle. In the case at bar not only was this implied covenant available to plaintiffs, but it is expressly incorporated in the agreement, which latter must be read into and made part of the deed.

[4] The court found that after delivery of the deed defendants claimed that they were not required to do any work under said agreement or said deed; "and thereafter repudiated any and all obligations on their part to do any work on said properties." Holding that view as to its obligations, appellant cannot be heard to complain that plaintiffs sought the only adequate relief open to them. Appellant's suggestion that their remedy was for damages is devoid of merit. A moment's reflection would convince the legal mind that in a case of this character damages would be difficult, if not impossible, of ascertainment. This fact, indeed, is one of the reasons given by the courts for enforcing the rule in these royalty cases.

The judgment is affirmed.

Burnett, J., and Hart, J., concurred.