[Civ. No. 11531.   Second Appellate District, Division One.—June 22, 1938.]

ROBERTA SEMPLE, Respondent, v. WILLEDD ANDREWS, Appellant.

Willedd Andrews, *in pro. per.*, and Joseph Scott for Appellant.

Stanley Arndt and Joseph Fainer for Respondent.

WHITE, J.—This is an appeal by the defendant from a judgment in favor of plaintiff for damages in the sum of $2,000 and costs in an action for slander. The complaint presents two causes of action, and although the first cause of action is denominated by defendant as an action for libel, there is no question but that both causes of action sound in slander.

In her complaint plaintiff alleged that she then was and for many years last past had been by profession an ordained evangelist; that as such evangelist she was and had been well known to and recognized by thousands of persons; that plaintiff had acquired and maintained and then possessed a "good and favorable" reputation, all of which was to the defendant well known. Plaintiff then alleged that she was a member of the board of trustees and an officer and member of the Echo Park Evangelistic Association and Church of the Four Square Gospel, an evangelistic organization and church respectively; and further, that plaintiff as such was and is well known to thousands of persons throughout Southern California. The complaint then sets forth that plaintiff was the only daughter of Aimee Semple McPherson, president of the board of trustees and founder of both the association and church above referred to, as well as being pastor of said church; and that a difference of opinion had arisen between

plaintiff and her mother as to matters of administration in connection with both the association and the church. It is then alleged that upon an occasion on or about October 1 or 2, 1936, defendant was interviewed by a news reporter for a Los Angeles daily newspaper, and then and there falsely and maliciously published and made a statement of and concerning the plaintiff for publication in the press of Los Angeles County and throughout the nation, which statement, it was alleged, defendant intended to be given widespread circulation through the daily press, so that hundreds of thousands of persons should read and see the same. It was during this conversation with the newspaper reporter that the alleged slanderous statements were made, and which alleged slander consisted in appellant's having said, speaking of and concerning respondent, that "Mrs. McPherson has been intimidated, threatened and blackmailed for the last time. This time she is prepared to fight to the finish. While she regrets that the war will be with her own flesh and blood —with her own daughter—the only course ahead of her is protection from destruction of the organization which has consumed the best years of her life."

It is then alleged that by using the word "organization" defendant then and there referred to and intended to refer to and meant the Echo Park Evangelistic Association and the Church of the Four Square Gospel, and that the persons hearing or reading said words generally so understood them as defendant planned and intended. Then follows an allegation that "by said words of defendant set forth in the preceding paragraph, said defendant published and charged, understood, meant and intended to mean, that plaintiff had intimidated, threatened and blackmailed, and had attempted to blackmail, her mother, Aimee Semple McPherson, and that plaintiff was destroying or attempting to destroy the Echo Park Evangelistic Association and the Church of the Four Square Gospel, and was guilty of a crime involving moral turpitude, to wit: extortion and attempted extortion, and the persons who read or heard said words generally understood them as so meaning, all as defendant planned and intended".

The second cause of action of the complaint is identical with the first, except that instead of charging the allegedly slanderous statements to have been made to one named reporter, it sets forth that the same were made to various un-

named reporters of daily newspapers and news services, which allegedly slanderous statements set forth in the second cause of action are identical with those in the first cause of action, except that the word "blackmail" was not therein used.

Appellant demurred both generally and specially to respondent's amended complaint. The demurrers were overruled, whereupon an answer was filed. Subsequently appellant filed an amended answer and later an amendment to the amended answer, and the cause went to trial on the issues raised by the aforesaid pleadings and amendments thereto, before the court sitting without a jury. This appeal comes before us on the judgment roll alone, omitting entirely the evidence given at the trial. Accordingly, it must be presumed that the evidence fully supports the findings and judgment. (*Myers* v. *Canepa,* 37 Cal. App. 556 [174 Pac. 903, 906].)

Appellant contends that the complaint fails to state a cause of action and that his demurrer should have been sustained for the reason that in the allegedly slanderous statement attributed to him the name of the respondent was not specifically mentioned as being the one who had intimidated, threatened and blackmailed in the past and that the statement of a future action does not refer to any crime; also, for the reason that, so far as the second cause of action is concerned, the complaint fails to allege injury to the reputation or to the feelings of respondent. Appellant having filed both a general and special demurrer, it should therefore here be noted with reference to appellant's special demurrer, which was overruled, that thereafter he filed an answer containing both denials and affirmative defenses, upon all of which issues trial was had. ██ It is manifest that any alleged uncertainty or ambiguity in the complaint cannot be considered prejudicial error after a full and complete trial on the merits (*Baker* v. *Miller,* 190 Cal. 263 [212 Pac. 11]), particularly when, as here, none of the evidence is brought before us. (*Myers* v. *Canepa, supra; Sledge* v. *Stolz,* 41 Cal. App. 209 [182 Pac. 340].) When a case has been tried and a judgment rendered on the facts, in order to warrant a reversal upon the ground of error in overruling a demurrer interposed on the ground of uncertainty or ambiguity in the complaint, it must appear that some substantial right of the demurrant has been affected, some prejudicial error, as dis-

tinguished from abstract error, suffered by him, or he has no room for complaint. How can this court determine that appellant was injured by the overruling of the special demurrer in this case in the absence of the record showing what occurred at the trial? It may have been that appellant consented to the trial on its merits without objection to the evidence introduced in support of the complaint, notwithstanding its defects.

As against appellant's general demurrer the complaint herein was sufficient. Section 46 of the Civil Code defines slander as "a false and unprivileged publication, other than libel, which:

"1. Charges any person with crime, or with having been indicted, convicted, or punished for crime;

"2. Imputes in him the present existence of an infectious, contagious, or loathsome disease;

"3. Tends directly to injure him in respect to his office, profession, trade, or business, either by imputing to his general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits;

"4. Imputes to him impotence or a want of chastity; or,

"5. Which, by natural consequence, causes actual damage."

The code definition of slander, like that of libel, is very broad, and has been held to include almost any language which, upon its face, has a natural tendency to injure a person's reputation, either generally or with respect to his occupation. (*Schomberg* v. *Walker,* 132 Cal. 224 [64 Pac. 290] ; *Stevens* v. *Snow,* 191 Cal. 58 [214 Pac. 968] ; *Tonini* v. *Cevasco,* 114 Cal. 266, 272 [46 Pac. 103].) In the determination of this question, the alleged slanderous publication is to be construed "as well from the expressions used as from the whole scope and apparent object of the writer". (*Stevens* v. *Storke,* 191 Cal. 329, 334 [216 Pac. 371] ; *Bettner* v. *Holt,* 70 Cal. 270 [11 Pac. 713].) The case last above cited states that "not only is the language employed to be regarded with reference to the actual words used, but according to the sense and meaning under all the circumstances attending the publication which such language may fairly be presumed to have conveyed to those to whom it was published. So that in such

cases the language is uniformly to be regarded with what has been its effect, actual or presumed, and its sense is to be arrived at with the help of the cause and occasion of its publication.

"And in passing upon the sufficiency of such language as stating a cause of action, a court is to place itself in the situation of the hearer or reader, and determine the sense or meaning of the language of a complaint for libelous publication according to its natural and popular construction."

That is to say, the allegedly slanderous publication is to be measured, not so much by its effect when subjected to the critical analysis of a mind trained in the law, but by the natural and probable effect upon the mind of the average hearer or reader. A defendant is also liable for what is insinuated as well as for what is stated explicitly. (*Schomberg* v. *Walker, supra,* p. 227.)

■ Appellant's contention that the "complaint must be certain as to the person defamed" is answered by section 460 of the Code of Civil Procedure, which reads: "In an action for libel or slander it is not necessary to state in the complaint any extrinsic facts for the purpose of showing the application to the plaintiff of the defamatory matter out of which the cause of action arose; but it is sufficient to state, generally, that the same was published or spoken concerning the plaintiff; and if such allegation be controverted, the plaintiff must establish on the trial that it was so published or spoken." Appellant apparently is laboring under the impression that when an alleged slanderous statement fails to contain a name from which a hearer thereof knows the plaintiff, the alleged slander is not actionable *per se* as to plaintiff, and that in order to recover damages for such publication the plaintiff must allege facts and circumstances known to the hearer or reader of the alleged slander by means of which the hearer or reader was reasonably certain that the plaintiff was the person defamed by the publication; or allege other facts which show that plaintiff sustained special damage by reason of the publication. This is not an altogether correct conception of the law. Appellant has confused the rules of pleading with the rules of evidence. The complaint alleged, in language which we have quoted, the fact that at the time of the publication of the alleged slander plaintiff was the only daughter of Aimee Semple McPherson,

234

president of the board of trustees and founder of the Evangelistic Association and Church, with which religious organizations plaintiff was affiliated as an officer and member; that differences of opinion had arisen between plaintiff and her mother as to matters of administration of the affairs of said religious organizations. It was further alleged that during the existence of this controversy between plaintiff and her mother, the defendant uttered the alleged slanderous statements of and concerning plaintiff. The complaint further set forth the fact that by the use of the word ''organization'' in the alleged slanderous statement, defendant then and there referred to and intended to refer to and meant the association and church aforesaid, and that persons hearing or reading the allegedly slanderous statements generally so understood them. The complaint also averred that the publications were meant and intended to mean that plaintiff had intimidated, threatened, blackmailed, and attempted to blackmail, her mother, and that plaintiff was destroying or attempting to destroy the Echo Park Evangelistic Association and the Church of the Four Square Gospel, and was guilty of a crime involving moral turpitude, to wit, extortion and attempted extortion. Beyond this, the complaint further averred that persons who heard or read the claimed slanderous words generally so understood them. So far as the rules of pleading are concerned, it is clear that the complaint stated a cause of action for slander of and concerning the plaintiff. In this regard, referring to section 460 of the Code of Civil Procedure, the Supreme Court, in the case of *Harris* v. *Zanone,* 93 Cal. 59, 65 [28 Pac. 845], has said: ''By this provision the inducement and colloquium are dispensed with, and if the words charged are libelous in themselves, the plaintiff is only required to allege that the libelous words were spoken 'of and concerning the plaintiff'. This is an issuable fact, as was the colloquium under the former system, and if denied, must be established at the trial.''

It must be borne in mind that the complaint alleges, and for present purposes it must be taken to be true, that respondent for some time prior to the publication of the alleged slander had been a duly ordained minister of the gospel. A court can take notice of the relation in which a minister of the gospel stands to the church with which he or she is connected and with the community in which he or she lives,

so far as personal morality and the fundamental principles upon which religion is based are concerned. The profession of evangelist peculiarly requires that a member of such profession be morally and ethically beyond reproach and abstain from intimidation, threats, or blackmail or attempted blackmail; and this is particularly true when we consider that the alleged victim of the asserted intimidation and blackmail was the mother of plaintiff. It is only reasonable to conclude that the words allegedly published by defendant as aforesaid tended directly to injure and did injure plaintiff in her profession as evangelist, and imputed to her general disqualification in those respects which the said profession peculiarly requires. The complaint is therefore immune to general demurrer upon the theory advanced by respondent.

In the case at bar, reference to the clerk's transcript shows that upon the trial of the action one of the issues as presented by appellant's amendment to his first amended answer was the claim that respondent herein did threaten her mother that unless the latter signed each of several agreements submitted to her, an action would be filed against the mother which would result in a receiver being appointed for the church organization, and further, that unless plaintiff's mother signed certain agreements in favor of plaintiff, that plaintiff's mother would be declared an incompetent and unfit to be the pastor of the church of which both mother and daughter were officers and members. In appellant's amended answer he pleads the truth of the charge that respondent and her agent intimidated, coerced and threatened the mother of respondent. In considering an appeal supported by the judgment roll only, all presumptions and intendments are to be indulged favorably to and in support of the judgment. In other words, it must be presumed that there was evidence sufficient to support the findings and the judgment, and that whatever might have properly occurred at the trial to cure the defects of the complaint in any vital particular did actually occur. Prejudicial error will never be presumed, and the burden is upon the appellant to show that it exists. There is no such showing here. Whatever may have been the interpretation put upon section 475 of the Code of Civil Procedure prior to the adoption of section 4½ of article VI of the Constitution, it is settled that injury is no longer presumed from error, but must be affirmatively shown. (*Vallejo*

*etc. R. R. Co.* v. *Reed Orchard Co.*, 169 Cal. 545 [147 Pac. 238].) Where, as in the instant case, the transcript of the proceedings had at the trial is not before us, we are in no position to say, even if error were present in the pleadings, that such error resulted in a miscarriage of justice. To so declare, we must base our declaration upon an examination of the entire cause, including the evidence; and this opportunity is denied us by reason of the appeal herein having been taken upon the judgment roll alone.

For the foregoing reasons, the judgment appealed from is affirmed.

Doran, Acting P. J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 18, 1938.