[No. E022279. Fourth Dist., Div. Two. June 24, 1999.]

PALM SPRINGS TENNIS CLUB, Plaintiff and Appellant, v.
DELIA RANGEL et al., Defendants and Respondents.

**COUNSEL**

Best, Best & Krieger and Douglas S. Phillips for Plaintiff and Appellant.

Vorzimer, Masserman & Ecoff, Andrew W. Vorzimer, Charles David Trejo and Brandon T. Nichols for Defendant and Respondent Delia Rangel.

Byron G. Cornelius for Defendant and Respondent Morris Fisher.

**OPINION**

**RAMIREZ, P. J.**—Plaintiff Palm Springs Tennis Club (hereinafter PSTC) appeals from a judgment entered after the defendants' demurrers to the second amended complaint were sustained without leave to amend. PSTC complained that statements defendants published about Warren Low, its president and chairman of the board, were libelous of PSTC. The trial court determined the second amended complaint failed to state a cause of action for libel. We agree and affirm.

### FACTS AND PROCEDURAL HISTORY

On April 16, 1997, PSTC filed a complaint for libel against defendant Delia Rangel (hereinafter Rangel). On June 25, 1997, PSTC filed a first amended complaint for libel subjoining Morris Fisher (hereinafter Fisher) as an additional defendant. The defendants' demurrers to the first amended complaint were sustained with leave to amend.

PSTC's second amended complaint, filed on October 9, 1997, alleges: PSTC is a nonprofit corporation which, through its board of directors, operates a time-share resort known as the Palm Springs Tennis Club for the mutual benefit of its owners and members. Warren Low was and is the president, a member of the board, and the chairman of the board of PSTC, in addition to owning a time-share interest in PSTC. In January 1997 defendants published two documents attached as exhibits to the second amended complaint,[1] which contain the allegedly false statements, "Below are some items from PSTC Board Meeting Minutes. Please read and determine if you want to re-elect . . . Low. . . . [¶] . . . [¶] Mar. 11, 1995, Low attempts to assault Mrs. Rangel. He repeatedly raises his voice and insults Dr. Gan, the only female Board Member." (Italics omitted, underscoring in original.) The minutes from March 11, 1995, do not reference any such assault, voice raising or insults. The statements are libelous on their face and expose PSTC to hatred, contempt, ridicule and obloquy. The statements reflect poorly on PSTC and its board because they accuse the president and chairman of the board, while acting in his capacity as such, of attempting to commit an assault, which is a crime, during a board meeting. The statements concern the manner of performance of the president of the PSTC of the duties and responsibilities of that office, relate to the president in his official capacity as president and director of PSTC and relate directly to the trade and business of PSTC. The statements were seen by numerous PSTC owners in connection with a February 22, 1997, board of directors election. The statements have a deleterious effect on PSTC's ability to attract qualified board members, have cast doubt on the credibility and effectiveness of board members and have reduced the resale value of time-share ownership by creating a negative perception in the minds of potential buyers, thereby having a natural tendency to disadvantageously affect PSTC in its business and to affect its credit and property.

Rangel responded by filing both a demurrer and a motion to strike. Fisher joined in both motions. The demurrers were based upon the failure of the complaint to state a cause of action because PSTC lacks standing to sue on the facts alleged and because no "colloquium" was alleged which would make the statements defamatory as to PSTC. On December 15, 1997, the court sustained the demurrers without leave to amend and thereafter determined the motions to strike to be moot. The judgment dismissing the second amended complaint was filed on December 29, 1997.

## DISCUSSION

On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, we give the complaint a reasonable

---

[1]The exhibits are not attached to the second amended complaint in the clerk's transcript. We therefore refer to the exhibits to the first amended complaint, and assume they are identical.

interpretation, and treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law. A trial court errs in sustaining a demurrer when the plaintiff has stated a cause of action under any possible legal theory, and abuses its discretion in sustaining a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. (*Aubry* v. *Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967 [9 Cal.Rptr.2d 92, 831 P.2d 317].)

■ The question in the instant case is whether the allegedly defamatory statement could reasonably be interpreted as having been made against the corporate plaintiff, PSTC. In other words, do statements in a campaign flyer relating to the election of members to the PSTC Board of Directors, that "Low attempt[ed] to assault Mrs. Rangel" and "repeatedly raise[d] his voice and insult[ed] Dr. Gan, the only female Board Member" (italics omitted), expose PSTC to hatred, contempt, ridicule, or obloquy, or cause it to be shunned or avoided, or have a tendency to injure it in its business?[2]

■ Libel is recognized as either being per se (on its face), or *per quod* (literally meaning, "whereby"), and each requires a different standard of pleading. If no reasonable reader of a publication could impute to a statement therein a meaning which tended to harm the reputation of the plaintiff in any of the respects enumerated in Civil Code section 45,[3] then there is no libel at all. (*Barnes-Hind, Inc.* v. *Superior Court* (1986) 181 Cal.App.3d 377, 386 [226 Cal.Rptr. 354].) If a defamatory meaning appears from the language itself without the necessity of explanation or the pleading of extrinsic facts, there is libel per se. (*MacLeod* v. *Tribune Publishing Co.* (1959) 52 Cal.2d 536, 549 [343 P.2d 36].) If, however, the defamatory meaning would appear only to readers who might be able to recognize it through some knowledge of specific facts and/or circumstances, not discernible from the face of the publication, and which are not matters of common knowledge rationally attributable to all reasonable persons, then the libel cannot be libel per se but will be libel *per quod*. (*Barnes-Hind, Inc.* v. *Superior Court, supra*, 181 Cal.App.3d 377, 387.) Whether a statement can reasonably be given any defamatory interpretation is a legal question that we must resolve by determining the sense or meaning of the statements, under all the circumstances

[2]We recognize that plaintiff also asserts PSTC was directly libeled by the campaign flyer because it makes direct and false claims about the records of the corporation, i.e., that the minutes contain information they do not. However, as with the statements regarding Low, as will be shown, *post*, if the reader of the flyer has no knowledge of the actual contents of the minutes, the flyer cannot be interpreted as being libelous to PSTC.

[3]"Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." (Civ. Code, § 45.)

attending the publication, according to the natural and popular construction which would be ascribed to them by the average reader. (*MacLeod* v. *Tribune Publishing Co.*, *supra*, 52 Cal.2d 536, 546-547.)

We recognize that corporate entities, such as PSTC, may bring actions for defamation. (*Vegod Corp.* v. *American Broadcasting Companies, Inc.* (1979) 25 Cal.3d 763, 770 [160 Cal.Rptr. 97, 603 P.2d 14].) Nonetheless, if language written about a corporate officer cannot be interpreted as saying anything about the way that officer performs his or her duties and responsibilities as an officer of the corporation, so as to have a natural tendency to affect the corporation disadvantageously in its business, the corporation has no right of action. Stated another way, words written about a corporate officer give no right of action to the corporation unless spoken or written in direct relation to the trade or business of the corporation. (*Washburn* v. *Wright* (1968) 261 Cal.App.2d 789, 793-794 [68 Cal.Rptr. 224].)

On their face, the allegedly libelous statements obviously do not directly relate to the trade or business of PSTC. The statements, buried in campaign literature regarding the election of members to PSTC's board of directors, are written not about the board as a whole or its ability to function adequately. Rather, the statements are written about Warren Low, urging that he should not be reelected, but should be replaced by a better candidate. The statements are made about Low in his capacity as a candidate for the board and do not involve PSTC as a corporation at all, the allegations in the complaint notwithstanding. Further, the specific statements complained of do not implicate any relationship between PSTC and Low at the time the bad acts were allegedly committed. Given their context, we cannot envision how any reasonable reader could ascribe from these statements any direct relationship to PSTC's trade or business.

The worst that can be inferred about PSTC from the statements is that a person who behaved in an unruly manner at one of its board meetings had, at some point or points in time, been elected by the member-owners to serve on the board of directors. However, on their face, the statements were made in an election flyer urging that unruly man's ouster because of *his* past behavior, not any conduct of PSTC's. The suggestion is the publisher of the statement believes the member-owners made a poor choice in the last election. The above inference is patently not defamatory of PSTC. Its allegations to the contrary are not sufficient to withstand demurrer when they contradict the unambiguous meaning of the flyer attached as an exhibit and incorporated into the complaint as the basis for the libel claim. (*Hill* v. *City of Santa Barbara* (1961) 196 Cal.App.2d 580, 586 [16 Cal.Rptr. 686].)

Having determined that the average reader could not understand these allegedly libelous statements to have been made in direct relation to the trade

or business of PSTC on their face, we conclude that plaintiff has not pled a case of libel per se and must agree with the trial court that under the circumstances, PSTC cannot do so.

We now decide whether PSTC has stated a cause of action for libel *per quod.* In pleading a case of libel *per quod* the plaintiff cannot assume that the court has access to the reader's special knowledge of extrinsic facts but must specially plead and prove those facts.[4] (*Barnes-Hind, Inc.* v. *Superior Court, supra,* 181 Cal.App.3d 377, 387; see also *Martin* v. *Sutter* (1922) 60 Cal.App. 8, 13 [212 P. 60] [to establish a case for libel *per quod,* plaintiff must prove that the publisher of the words intended they should be understood as imputing wrongdoing or wrong conduct to plaintiff and that the words were understood in that fashion by those who read them].)

 There are no allegations in the complaint that the readers of this document had any special knowledge of facts from which they could discern comments made about Warren Low in campaign literature were defamatory of PSTC. There are no allegations how the readers would have known the publishers intended to impute Low's wrongdoing to PSTC nor are there any allegations the readers had been provided with the board meeting minutes. The second amended complaint therefore fails to adequately state a cause of action for libel *per quod.* Accordingly, it follows, on the facts alleged, the ostensibly defamatory statements cannot be reasonably interpreted as having been made against the corporate plaintiff, PSTC, under any theory of libel. The demurrer to the second amended complaint was properly sustained.

Given the nature and context of the statements, absent some very strange circumstance, the only intent which can be imputed to the publishers is the intent to defeat Low's reelection to the board. Hence, we cannot conceive of how PSTC might amend its complaint to state any cause of action for libel against defendants. However, we need not speculate on that point. While a plaintiff need not request leave to amend in order to preserve on appeal the issue of whether the court abused its discretion in sustaining a demurrer without leave to amend (Code Civ. Proc., § 472c), on appeal the plaintiff does bear the burden of proving there is a reasonable possibility the defect in the pleading can be cured by amendment. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) " '. . . Plaintiff must

---

[4]PSTC, citing *Semple* v. *Andrews* (1938) 27 Cal.App.2d 228 [81 P.2d 203], asserts it need only allege that the libelous words were "spoken 'of and concerning the plaintiff,' " which it has done. This would be true if the words charged were libelous in themselves. (*Id.* at p. 234.) However, this not being the case, PSTC bears a greater burden of pleading. (*Barnes-Hind, Inc.* v. *Superior Court, supra,* 181 Cal.App.3d 377, 387.)

show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading. . . .' [Citation.]" (*Goodman* v. *Kennedy* (1976) 18 Cal.3d 335, 349 [134 Cal.Rptr. 375, 556 P.2d 737].) ▮ Having made no attempt to indicate how the complaint may have been amended to state a cause of action under any theory of libel (or any theory at all), PSTC has failed to establish that the trial court abused its discretion.

DISPOSITION

The judgment of dismissal is affirmed. Defendants to recover their costs on appeal.

Richli, J., and Gaut, J., concurred.