Filed 12/21/21  Hill v. Law Offices of Beatrice L. Snider CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| CARLA HILL,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>LAW OFFICES OF BEATRICE L. SNIDER, APC,<br><br>    Defendant and Respondent. | D076958<br><br><br>(Super. Ct. No. 37-2015-00014603-CU-PN-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Kenneth J. Medel, Judge.  Affirmed.

Carla Hill, in pro. per., for Plaintiff and Appellant.

Klinedinst, Heather L. Rosing, Leah A. Plaskin Lorenz, and Robert M. Shaughnessy, for Defendant and Respondent.

Carla Hill sued her former attorneys, the Law Offices of Beatrice L. Snider, APC (LOBS), after that firm represented her in postjudgment family law proceedings.  After several unsuccessful efforts to plead viable causes of action, Hill filed a third amended complaint (TAC).  LOBS responded with a demurrer and motion to strike.  The trial court granted both motions and entered judgment accordingly.

Hill appeals.[1]  She contends the trial court erred by granting the motions and she should be allowed leave to amend to add additional allegations to her complaint.  We conclude Hill has not shown reversible error or a reasonable possibility she could state a viable cause of action against LOBS.  We therefore affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Consistent with our standard of review, we draw the historical facts from the well-pleaded allegations in Hill's TAC and from judicially noticeable sources.  (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.)  Portions of this section are taken from our prior opinion in this matter.  (See *Hill v. Law Offices of Beatrice L. Snider, APC* (Apr. 17, 2019, D071656) 2019 WL 1648505 [nonpub. opn.] (*Hill*).)

Hill married Ronald Hill (Ronald) in 2009, and they separated approximately 10 months later.  In subsequent dissolution proceedings, the parties agreed to mediation before a special master, which resulted in a stipulated judgment.  Hill was represented at the mediation by Lori V., a San Diego family law attorney.

The stipulated judgment was intended to resolve the parties' rights and obligations regarding community assets and debts, spousal support, attorney fees, and all other pending issues.  In general, Ronald was awarded all community property assets and debts (if any) in exchange for a $50,000 equalization payment to Hill.  The judgment identified a residence acquired during marriage with Ronald's separate property funds, which was later sold at a loss.  The judgment also identified a golf course acquired immediately

_____

[1]    Hill has been declared a vexatious litigant and appears to be subject to a prefiling order.  (Code Civ. Proc., §§ 391, 391.7, subd. (a).)  Hill applied for permission to proceed with this appeal, which we granted.  (*Id.*, § 391.7, subd. (b).)

2

before the couple's separation, also purchased with Ronald's separate property funds. The golf course was confirmed as Ronald's sole and separate property. The parties' personal possessions and their separate bank accounts were confirmed as their separate property. The judgment stated there were no community businesses. The $50,000 equalization payment reflected, in part, Hill's share of any potential community interest in Ronald's ongoing real estate development business. The judgment terminated Ronald's obligation to pay any further spousal support, in light of the equalization payment and the spousal support paid previously.

In the stipulated judgment, the parties waived the mediation privilege and any confidentiality protections in the event of a dispute over the interpretation or enforcement of their agreement. They specifically authorized the special master to testify regarding the interpretation of the agreement and the settlement process.

The parties agreed to exchange final declarations of disclosure before entry of judgment. The judgment noted the parties previously exchanged preliminary declarations of disclosure and related attachments.

The parties explicitly waived any assessment of the value of any community property. The stipulated judgment stated, "Husband and Wife acknowledge that their respective attorneys advised them of the necessity to independently investigate and to conduct discovery concerning the value of the community estate. The Parties acknowledge that they have instructed their respective attorneys to settle the case as set forth in this Agreement without a full and complete assessment of the value of the property. Each Party has instructed his or her attorney not to undertake any assessment or investigation. The Parties acknowledge that each is satisfied with the property division set forth in this Agreement and that his or her attorney has

3

prepared the necessary documentation in accordance with their desires and instructions."

The family court entered the stipulated judgment in October 2011. Six months later, Hill filed a motion to set aside the judgment. Representing herself, she argued that the judgment should be vacated because Ronald did not serve a final declaration of disclosure, he failed to disclose the true extent of his income and assets, and the judgment was the result of fraud, mistake, or duress.

Hill subsequently retained LOBS to represent her in connection with these postjudgment proceedings. The retainer agreement specified that Hill would pay an initial retainer fee of $15,000 and an initial retainer payment for costs of $1,000. The agreement stated, "You understand that the [retainer fee] will be less than and is not intended to constitute the total fee. You agree to pay the difference between the total fee and the amount of the retainer. The fee is based on many factors . . . . It is expected and anticipated that the fee in this case will exceed the amount of the retainer." It noted, "[LOBS] has not made any prediction or commitment as to any maximum amount of fees and costs, nor as to the outcome of any pending or prospective proceedings."

The retainer agreement provided that LOBS would have a lien for its fees on any assets awarded in the proceeding and that LOBS may request Hill to sign a note or security instrument to ensure payment of its fees and costs. The agreement included the text of former rule 3-300 of the California Rules of Professional Conduct.[2] The agreement stated, "Rule 3-300 . . . specifies Client's rights in connection with this lien. Please read this

_____

[2] Subsequent rule references are to the former Rules of Professional Conduct.

4

rule carefully. It is important that Client understand that prior to signing this Agreement Client should seek the advice of independent legal counsel of Client's choice to review this transaction and this Agreement in its entirety." Hill initialed this section immediately below the text of the rule. Later, the agreement reiterated, "Client understands that Client has the right to consult with another attorney of Client's own choosing before signing this Agreement."

LOBS, representing Hill, filed a supplemental memorandum in support of her motion to set aside the judgment. The supplemental memorandum argued that the judgment should be vacated because (1) the mediator was improperly appointed and should have acted only as a special master; (2) Ronald failed to provide a final declaration of disclosure; (3) Ronald breached his fiduciary duty to Hill by failing to disclose the existence, character, and value of his assets; and (4) the stipulated judgment was obtained by fraud, perjury, and mistake. For example, the memorandum identified five bank accounts that Ronald had allegedly not disclosed, as well as millions of dollars in possible community assets. This amount represented, in part, the potential community interest in the residence and golf course acquired during the marriage.

In a supplemental declaration, Hill provided further detail regarding Ronald's disclosures and his alleged omissions. In addition to the bank accounts, Hill asserted that Ronald had failed to disclose his ownership of various real property lots in and around the golf course, as well as the fact that some lots had been subdivided. An accountant reviewed Ronald's bank account records and identified additional potential community assets. The accountant submitted a written declaration in support of the set aside motion.

At a hearing, the family court denied Hill's motion to set aside the judgment. It noted that the parties had failed to exchange final declarations of disclosure before entry of judgment, but it found that Hill had not shown the failure had a material impact on the judgment. (See *In re Marriage of Steiner & Hosseini* (2004) 117 Cal.App.4th 519, 526-528.) The family court determined that the bank account information did not reflect any community property interest, and Ronald had disclosed most of the properties Hill identified. Certain other properties did not need to be disclosed, and Hill was aware of the golf course as a major asset at issue in the dissolution proceedings. The family court emphasized that Hill waived any asset valuation as part of the stipulated judgment and elected to settle the dissolution proceeding instead of going to trial. The court noted that the parties had engaged in extensive discovery, over approximately two years, and Hill had been represented by several attorneys in succession. The court found that Hill agreed to have the special master act as a mediator, so she could not assert error based on that dual role.

The family court found that Hill's conduct in filing the set aside motion was sanctionable under Family Code section 271. But it declined to award sanctions against Hill because they would impose an unreasonable financial burden on her. The court denied Hill's request for sanctions against Ronald under section 271, and it also denied Hill's request for contribution from Ronald. It found that Hill had the ability to pay her own attorney fees, and the stipulated judgment precluded any contribution in any event.

Hill, representing herself, filed another memorandum and declaration in support of her motion to set aside the stipulated judgment, as well as a motion for reconsideration of the court's order. LOBS moved to withdraw as Hill's counsel, which the family court granted. The family court subsequently

6

denied Hill's motions on various grounds, including that the court "found no evidence of fraud" by Ronald.

Hill sued LOBS. Her initial complaint identified causes of action for breach of contract, professional negligence, breach of fiduciary duty, and fraud. LOBS demurred to the complaint and filed a motion to strike various allegations. In response, Hill filed a first amended complaint (FAC). The FAC identified causes of action for professional negligence, breach of fiduciary duty, breach of contract, "[c]onspiracy," and negligent infliction of emotional distress. LOBS demurred and moved to strike again. At a hearing, the court granted Hill leave to file a second amended complaint (SAC).

Hill's SAC alleged two causes of action, for professional negligence and breach of fiduciary duty. The professional negligence cause of action alleged that LOBS failed to meet the applicable standard of care by, among other things, misstating the law governing set aside motions under the Family Code, waiving Hill's ability to obtain a statement of decision, failing to pursue discovery, inadequately addressing Ronald's arguments regarding disclosure, ignoring a letter regarding mediation that Hill claimed supported her position, and failing to offer live testimony of the retained expert accountant. Hill alleged that she would have obtained a more favorable judgment, absent LOBS's errors, because the court would have granted her set aside motion and awarded her attorney fees, sanctions, spousal support, and a one-half interest in the golf course property.

Hill's cause of action for breach of fiduciary duty mirrored her professional negligence claim. She alleged that LOBS did not act diligently in its representation, including failing to conduct discovery and overlooking key issues. She also alleged that a LOBS attorney, Edward C., knew Hill's

7

former attorney Lori on a "close personal basis" and did not reveal this information to Hill. Edward told Hill, however, that Lori and other attorneys had committed malpractice and "did not do their job." Hill alleged she was damaged because her set aside motion was denied. She claimed that she could have recovered all of the value of the golf course property, plus attorney fees and sanctions, if LOBS had acted properly.

LOBS again demurred and moved to strike portions of the SAC. In its demurrer, LOBS argued that the SAC was uncertain and failed to allege facts sufficient to state any cause of action. LOBS wrote that the SAC was "ambiguous with respect to the subject of [Hill's] claims" and it "seems to combine multiple legal theories into her causes of action." LOBS asserted "it is difficult to understand the gravamen of each cause of action and for [LOBS] to make informed responses to the allegations." Regarding the breach of fiduciary duty claim, LOBS argued that Hill had not identified any ethical breach beyond potential professional negligence. LOBS noted that Hill mentioned a potential conflict regarding Lori, but it argued that Hill had not alleged any harm that resulted from that conflict. LOBS highlighted Hill's admission that Edward told her Lori had committed malpractice, which showed he had no conflict or bias. Regarding both causes of action, LOBS claimed that Hill had not sufficiently alleged facts showing that she would have obtained a better result but for LOBS's alleged errors and omissions. The family court's order in the underlying dissolution proceedings showed that Hill "knew about the assets before she settled, made the decision to settle the case, and knowingly gave up her right to obtain a valuation of the property before the settlement." Hill had not alleged facts showing that, but for LOBS's conduct, she "could have obtained a better settlement or that the settlement was unreasonable."

8

The court sustained the demurrer with leave to amend.  The court found the SAC "is currently so uncertain that it is difficult for [LOBS] to provide a meaningful verified response[].  Many sentences are structured in a manner that makes deciphering the meaning arduous and may require speculation by [LOBS] in attempting to respond. . . .  On substance, it is not clear what specific actions [LOBS] allegedly took that caused [Hill's] damages."  The court believed that Hill's two causes of action seemed to be duplicative.  The only additional allegation involved Edward's alleged friendship with Lori.  The court found, "However, even if [Hill's] allegation was true, such a friendship would not constitute a breach of any fiduciary duty.  [Hill] has not alleged how this supposed friendship harmed her in any way."  The court sustained LOBS's demurrer and granted Hill leave to amend.  It denied LOBS's motion to strike as moot.

Hill filed her TAC, which contained a number of new allegations and causes of action.  Hill's first cause of action was for breach of contract, based on the retainer agreement.  Hill alleged that LOBS breached the retainer agreement by "engaging in dilatory tactics" and otherwise failing to provide competent legal services.  Hill also made a number of non-contract allegations under this cause of action, including that Edward failed to disclose his "friendship and business relationship" with Lori, suppressed evidence showing Lori's alleged malpractice, "colluded with opposing counsel to unnecessarily delay matters," engaged in unfair business practices, and took a security interest in Hill's assets in violation of former rule 3-300.  Based on these allegations, Hill sought damages of at least $20,000, which represented the fees she paid to LOBS.  Hill's second cause of action was for breach of fiduciary duty, based on LOBS's alleged incompetent representation and Edward's failure to disclose the relationship to Lori.

9

Hill's third cause of action was for breach of the implied covenant of good faith and fair dealing, based on LOBS's failure to achieve results and its alleged abandonment of Hill when it withdrew from representing her. Hill's fourth cause of action was for fraudulent concealment, based on Edward's failure to disclose the fact that Lori was his "friend and business associate, which was a substantial factor in causing [LOBS] to refuse to perform legal services for which they were retained and this harmed [Hill]." Hill's fifth cause of action was for "conspiracy," also based on Edward's alleged relationship with Lori. Hill's sixth cause of action was for professional negligence, based on a "[p]resumption of [n]egligence *per se*," and various acts of incompetence already alleged. Hill's seventh and final cause of action was for negligent misrepresentation, based on the fact that LOBS "negligently misrepresented facts and law to [Hill] and the Court."

Hill's prayer for relief included a request for damages based on her alleged half interest in the $4.5 million golf course property and a $600,000 residence. She also sought a declaration of her rights under the law and the retainer agreement, including that LOBS's business practices were fraudulent under Business and Professions Code section 17200.

Hill attached copies of the retainer agreement and an unpaid LOBS legal bill showing an outstanding balance of over $60,000. Hill also attached a screenshot of Edward's professional LinkedIn profile showing a "[c]onnection[]" to Lori.

Before Hill filed her TAC, LOBS filed a motion for summary judgment directed at the SAC. At LOBS's request, the trial court "deemed" the motion to apply to the TAC and granted it. Hill appealed, and we reversed because the allegations of the TAC were materially different from the allegations of the SAC. (See *Hill*, *supra*, 2019 WL 1648505, at *10.) We expressly declined

10

to consider whether the TAC stated a valid cause of action or was otherwise proper. (*Ibid*.)[3]

On remand, LOBS again demurred and moved to strike portions of the TAC. In its demurrer, LOBS argued (1) Hill's allegations were insufficient to state any cause of action; (2) Hill improperly added new causes of action, beyond the scope of the court's order granting leave to amend; and (3) Hill's contract claims were barred by res judicata and collateral estoppel, based on the jury's verdict and this court's appellate decision. LOBS's motion to strike was primarily directed at the improperly added causes of action, two individuals improperly named as defendants, and Hill's prayer for various types of damages and attorney fees.

Hill opposed the demurrer and motion to strike. In addition to rebutting LOBS's arguments, Hill claimed she could amend her complaint to state causes of action for breach of contract, breach of fiduciary duty, and potentially others.

After hearing argument, the trial court sustained the demurrer and granted the motion to strike in a written order. The court primarily found that the TAC failed to state any cause of action. It wrote that an overarching defect in all of Hill's causes of action was causation: Hill failed to show how, but for any alleged negligence or breach by LOBS, she would have prevailed on her set aside motion and obtained a more favorable division of marital assets. For example, Hill did not allege what evidence or testimony LOBS should have presented that would have affected the family court's decision.

---

[3] Separately, the trial court held a jury trial on LOBS's cross-claim against Hill for unpaid legal fees. The jury found in favor of LOBS. Hill's appeal raised various claims of error, but we found them moot because Hill had obtained a discharge of the judgment in federal bankruptcy proceedings. (See *Hill*, *supra*, 2019 WL 1648505, at *1, fn. 1.)

11

Regarding breach of contract and breach of the implied covenant, the court wrote that none of the acts Hill alleged showed any breach. For example, requiring payment of a retainer was one of the terms of the retainer agreement. It was not a breach of that agreement. Regarding the lien on any recovery, the court noted that such a lien was permitted if obtained in compliance with former rule 3-300. But even if LOBS violated former rule 3-300, Hill did not obtain any recovery and LOBS did not attempt to enforce any lien, so Hill had not suffered any injury. The court also found that Hill's claims were barred by the doctrines of claim and issue preclusion (res judicata and collateral estoppel).

Regarding breach of fiduciary duty, the court noted that it overlapped with Hill's claim for professional negligence. It found Hill's allegations "conclusory at best" and therefore insufficient. Regarding concealment, the court found that Hill's allegations failed to meet the heightened pleading requirements for fraud. It explained that Hill had not alleged how any alleged concealment of Edward's friendship with Lori caused harm. Regarding conspiracy, Hill failed to state any facts supporting the conclusion that LOBS and Lori conspired to harm her. Similarly, regarding negligent misrepresentation, Hill did not allege any facts to support that cause of action.

Regarding professional negligence, the court found that Hill's allegations were either conclusory or related to proceedings that occurred before Hill retained LOBS. Hill did not allege facts showing that any allegedly negligent conduct by LOBS led to the family court's denial of her set aside motion.

The trial court also specifically found that (1) Hill improperly included new causes of action, beyond the scope of the court's leave to amend, and

12

(2) Hill could not obtain damages for emotional distress based on claims for legal malpractice.

The court considered and denied Hill's request for leave to amend. It wrote, "After multiple amendments, plaintiff has not stated facts she needs to support the claims. Plaintiff has not demonstrated that there exist facts to get around the issues raised in this demurrer and the accompanying motion to strike. Nothing in the opposition shows that she can cure her defective pleading by way of an amendment." The court entered judgment, and Hill appeals.

DISCUSSION

I

*Standards of Appellate Briefing and Review*

Hill represents herself in this appeal. "Under the law, a party may choose to act as his or her own attorney. [Citations.] '[S]uch a party is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys. [Citation.]' [Citation.] Thus, as is the case with attorneys, pro. per. litigants must follow correct rules of procedure." (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247.) Hill has not followed the rules of appellate procedure and her briefing is insufficient to demonstrate any reversible error. We therefore affirm the judgment.

" 'A judgment or order of the lower court is *presumed correct.* All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) "To demonstrate error, appellant must present

13

meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. [Citations.] When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' " (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.)

"This burden requires more than a mere assertion that the judgment is wrong. 'Issues do not have a life of their own: If they are not raised or supported by argument or citation to authority, [they are] . . . waived.' [Citation.] It is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness. When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 (*Benach*).)

Even where an appellant cites general legal principles in support of certain arguments, these principles do not in and of themselves demonstrate error. "Mere suggestions of error without supporting argument or authority other than general abstract principles do not properly present grounds for appellate review. The court is not required to make an independent, unassisted study of the record in search of error. The point is treated as waived and we pass it without further consideration." (*Dept. of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2002) 100 Cal.App.4th 1066, 1078.) " 'We are not bound to develop appellants' arguments for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived.' " (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 (*Cahill*).)

14

Hill's briefing does not satisfy these minimum standards. For example, large portions of her briefing consist of unfocused narration regarding alleged events that occurred before, during, and after LOBS represented her. This narration mentions numerous third parties whose identities, relationships, and relevance are unclear. Hill does little to link this narration to any cogent legal argument regarding why the court erred by sustaining LOBS's demurrer without leave to amend. To the extent she does so, her arguments are disjointed and conclusory. In general, Hill's briefing is disorganized, repetitive, and difficult to understand. We discuss the consequences of these deficiencies in further detail below.

II

*Demurrer Standards*

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*); accord, *Palm Springs Tennis Club v. Rangel* (1999) 73 Cal.App.4th 1, 4-5 (*Palm Springs Tennis*).)

15

A party may make a showing that she could validly amend her complaint for the first time in the appellate court. (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43 (*Rakestraw*).) "To satisfy that burden on appeal, a plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.' [Citation.] The assertion of an abstract right to amend does not satisfy this burden. [Citation.] The plaintiff must clearly and specifically set forth the 'applicable substantive law' [citation] and the legal basis for amendment, i.e., the elements of the cause of action and authority for it. Further, the plaintiff must set forth factual allegations that sufficiently state all required elements of that cause of action. [Citations.] Allegations must be factual and specific, not vague or conclusionary." (*Id.* at pp. 43-44.)

"The burden of showing that a reasonable possibility exists that amendment can cure the defects remains with the plaintiff; neither the trial court nor this court will rewrite a complaint. [Citation.] Where the appellant offers no allegations to support the possibility of amendment and no legal authority showing the viability of new causes of action, there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend." (*Rakestraw*, *supra*, 81 Cal.App.4th at p. 44; accord, *Palm Springs Tennis*, *supra*, 73 Cal.App.4th at pp. 7-8.)

Similarly, we review the court's order granting LOBS's motion to strike for abuse of discretion. (*Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 612.) Hill bears the burden of establishing such abuse. (*Ibid.*)

III

*Hill's Contentions*

Hill's opening brief largely fails to address the trial court's primary finding, i.e., that Hill's TAC did not allege sufficient facts to state any cause of action. Hill has therefore forfeited this issue on appeal. (See *Myles v. PennyMac Loan Services, LLC* (2019) 40 Cal.App.5th 1072, 1076 (*Myles*); *Benach*, *supra*, 149 Cal.App.4th at p. 852.)

Hill focuses on collateral matters, but they do not demonstrate *reversible* error in the absence of a showing that the TAC stated a cause of action. For example, Hill contends the court should not have applied the doctrines of res judicata and collateral estoppel to bar her contract-based claims and it should not have struck her new causes of action as beyond the scope of the court's leave to amend. We need not consider the merits of these two issues. Even if the court erred in both respects, Hill still has not established the judgment should be reversed because she has not shown the TAC stated a viable claim.

The same reasoning applies to the overlapping issues in LOBS's motion to strike. And again, Hill has forfeited any claim of error with respect to other issues in LOBS's motion to strike that go unaddressed in her opening brief, such as its challenge to Hill's prayer for punitive damages and emotional distress damages. (See *Myles*, *supra*, 40 Cal.App.5th at p. 1076; *Benach*, *supra*, 149 Cal.App.4th at p. 852.)

Hill does argue the court erred by not addressing her request for declaratory relief. But she does not offer any legal authority supporting her claim that declaratory relief was proper. She has therefore forfeited any claim of error. (See *Cahill*, *supra*, 194 Cal.App.4th at p. 956.) To the extent we can discern from her briefing, it appears Hill seeks declaratory relief

17

regarding various aspects of the underlying stipulated judgment. She has not shown why LOBS would be a proper party for such an action, given that LOBS is not a party to the stipulated judgment and has no rights or obligations stemming from it. In the TAC, her prayer for declaratory relief appeared to consist of affirmative claims against LOBS, meant to redress past alleged wrongs, which are not the proper subjects for declaratory relief. (See *County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 607-608.) To the extent Hill sought a general declaration regarding the law and the retainer agreement, she has not shown the court abused its discretion by declining to entertain such an action for declaratory relief under the circumstances. (See *BKHN, Inc. v. Department of Health Services* (1992) 3 Cal.App.4th 301, 308.) And, to the extent Hill claims the court erred by failing to specifically discuss declaratory relief in its written order, she has not shown the court was required to do so or that its absence would be reversible error.[4]

In addition to these specific contentions, Hill's opening brief contains an 18-page narrative, under the heading "STATEMENT OF THE CASE,"

_____

[4] Hill also argues that the three-amendment limit in Code of Civil Procedure section 430.41, subdivision (e)(1) should not apply because her FAC was filed before LOBS demurred to her original complaint. The specific relevance of this statute to this appeal is unclear. Hill does not support her argument with any cogent legal analysis or any citation to the record. It is therefore insufficient to show error, let alone reversible error. (See *Benach*, *supra*, 149 Cal.App.4th at p. 852; *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1011.) However, we note the record shows that LOBS demurred to Hill's original complaint, and the court granted Hill leave to amend, so Hill would appear to be incorrect that the statute does not apply. And even if it did not, Hill would still have to show a reasonable possibility she could amend her complaint to state a cause of action to obtain reversal here. (See *Blank*, *supra*, 39 Cal.3d at p. 318; *Rakestraw*, *supra*, 81 Cal.App.4th at p. 44.)

which appears to contain allegations that Hill believes can be added or substituted for her existing allegations to state one or more causes of action. This undifferentiated narrative is not organized by cause of action, and it is unclear which cause or causes of action Hill believes are supported by the allegations. Hill does not identify the elements of any cause of action, and she does not cite any authority or offer any cogent legal argument why her allegations are sufficient to state any cause of action. Much of the narrative concerns Hill's former husband Ronald, his attorney, and various other attorneys who apparently represented Hill before LOBS. Other than vague and conclusory assertions, Hill does little to shed light on the connection between these other individuals and Hill's claims against LOBS. This treatment is insufficient to carry Hill's burden on appeal to show a reasonable possibility she could amend her TAC to state a cause of action. (See *Rakestraw*, *supra*, 81 Cal.App.4th at pp. 43-44.) It is not our role to search this narrative and construct theories or arguments that might support a viable cause of action. (See *Cahill*, *supra*, 194 Cal.App.4th at p. 956; *Benach*, *supra*, 149 Cal.App.4th at p. 852.)

In her reply brief, apparently in response to LOBS's arguments, Hill focuses more directly on the trial court's finding that the TAC failed to state a cause of action. She references her opposition to LOBS's demurrer in the trial court, but such a reference is insufficient to advance her argument in this court. (See *Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 854.) She also includes another narrative history of the dissolution proceedings and her subsequent representation by LOBS, consisting of nine pages, but again she does not attempt to link this narrative to any causes of action. Consistent with well-established case law, we will not undertake such

19

an effort ourselves.  (See *Cahill*, *supra*, 194 Cal.App.4th at p. 956; *Benach*, *supra*, 149 Cal.App.4th at p. 852.)

After this narrative, Hill's reply brief focuses on breach of fiduciary duty.  She argues her TAC was sufficient to state a cause of action for breach of fiduciary duty and, in the alternative, she could add additional allegations to the TAC to state such a cause of action.  Hill did not include these arguments in her opening brief.  She has therefore forfeited them.  (See *Tilton v. Reclamation Dist. No. 800* (2006) 142 Cal.App.4th 848, 864, fn. 12; see also *Julian v. Hartford Underwriters Insurance Co.* (2005) 35 Cal.4th 747, 761, fn. 4.)  Even if she had not forfeited them, they are insufficient to show error.

Hill's argument that the TAC itself was sufficient consists almost entirely of quotations from various portions of the TAC.  Because Hill has not included any legal argument regarding these allegations or how they relate to the elements of breach of fiduciary duty, she has not shown the court erred by finding they did not state a claim.  (See *Myles*, *supra*, 40 Cal.App.5th at p. 1076; *Benach*, *supra*, 149 Cal.App.4th at p. 852.)

Hill's proposed amendment is likewise insufficient, whether styled as a claim for breach of fiduciary duty or (as Hill sometimes implies) a claim for professional negligence.  Her allegations are largely vague and conclusory, not factual and specific.  (See *Rakestraw*, *supra*, 81 Cal.App.4th at p. 44.)  Where Hill references specific events or actions, such as LOBS's decision to file two "preliminary objections to judges" and to present written rather than oral testimony from an accountant, she alleges only conclusions, not facts showing that such events were a breach of any fiduciary duty or fell below the applicable standard of care.  Nor does she allege sufficient facts showing causation or injury as a result of any specific events or actions.

"In order to plead a cause of action for breach of fiduciary duty, there must be shown the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach.  The absence of any one of these elements is fatal to the cause of action." (*Pierce v. Lyman* (1991) 1 Cal.App.4th 1093, 1101.)  Similarly, "[i]n order to establish a cause of action for legal malpractice the plaintiff must demonstrate:  (1) breach of the attorney's duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a proximate causal connection between the negligent conduct and the resulting injury; and (3) actual loss or damage resulting from the negligence." (*Thompson v. Halvonik* (1995) 36 Cal.App.4th 657, 661.)  "A plaintiff alleging legal malpractice in the prosecution or defense of a legal claim must prove that, but for the negligence of the attorney, a better result could have been obtained in the underlying action." (*Orrick Herrington & Sutcliffe v. Superior Court* (2003) 107 Cal.App.4th 1052, 1057 (*Orrick*).)  " 'The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence.' " (*Id.* at p. 1058.)

Hill appears to believe that her motion to set aside was required to be granted solely because the parties did not exchange final declarations of disclosure, but the law requires an additional showing of materiality. (See *In re Marriage of Steiner & Hosseini*, *supra*, 117 Cal.App.4th at pp. 526-528.)  Hill's allegation that LOBS acted negligently by failing to obtain this purportedly "mandatory" set aside is therefore unavailing.  Similarly, Hill faults LOBS for not seeking such a final declaration from Ronald under Family Code section 2107, but she has not shown that the statute applies where judgment has already been entered.

Hill makes various allegations against other individuals, such as Ronald and his attorney, and discusses events prior to LOBS's representation of her. These allegations are insufficient to establish a cause of action against LOBS, and they detract from potentially more pertinent allegations. We note specifically an extended discussion of Lori's handling of Hill's $50,000 equalization payment, which Hill does not link to any potential cause of action against LOBS beyond speculation and conclusory allegations of conspiracy. This discussion does not support a cause of action against LOBS.

Hill alleges various professional connections between LOBS and her former attorneys, including Lori, but she has not alleged any factual basis— or advanced any legal basis—for a claim of breach of fiduciary duty based on any alleged conflict of interest. Her allegations regarding how such connections might have affected LOBS's representation of her are ill-defined and, more importantly, are not linked to any meaningful factual allegations regarding how Hill would have obtained a better result if LOBS had acted differently. (See *Orrick*, *supra*, 107 Cal.App.4th at pp. 1057-1058.)[5]

Hill references former rule 3-300 and the lien imposed on any recovery as part of LOBS's retainer agreement, but she does not allege facts showing

---

[5] Hill's TAC contained a cause of action for fraudulent concealment based on Edward's alleged friendship and business relationship to Lori. Hill does not separately address this cause of action or the lack of specificity and lack of causation cited in the court's order sustaining LOBS's demurrer. Hill also does not separately discuss her causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, "conspiracy," and negligent misrepresentation. Hill has therefore failed to show any error in dismissing these claims or any reasonable possibility she could amend. (See *Myles*, *supra*, 40 Cal.App.5th at p. 1076; *Benach*, *supra*, 149 Cal.App.4th at p. 852.) We note that the factual bases for these claims largely overlap with Hill's claims for breach of fiduciary duty and professional negligence, so our discussion largely applies to these omitted claims as well.

22

any violation of that rule. The retainer agreement specifically informed Hill of the rule's protections and reproduced its text. The agreement stated, "Please read this rule carefully. It is important that Client understand that prior to signing this Agreement Client should seek the advice of independent legal counsel of Client's choice to review this transaction and this Agreement in its entirety." Hill alleges that LOBS did not give her seven days to review the agreement, but the relevance of this seven-day period is unclear. Hill's allegation is also too vague and conclusory to show any wrongdoing, as it is unknown how LOBS allegedly did not give Hill sufficient time to review the agreement.

Hill argues she was damaged by her payment of attorney fees to LOBS, on the theory that an attorney who violates the Rules of Professional Conduct is not entitled to fees. Hill has not alleged facts sufficient to show any such violation, but even if she had, it does not automatically preclude an attorney from receiving fees. (See *Pringle v. La Chapelle* (1999) 73 Cal.App.4th 1000, 1005-1006.) Instead, "there must be a serious violation of the attorney's responsibilities before an attorney who violates an ethical rule is required to forfeit fees." (*Id.* at p. 1006; see *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc.* (2018) 6 Cal.5th 59, 89-90; *Sullivan v. Dorsa* (2005) 128 Cal.App.4th 947, 965.) Hill has not alleged any such serious violation here.

More generally, Hill alleges she would have obtained a better division of marital assets if LOBS had acted properly, but her allegations are disjointed, conclusory, and rely at least in part on the wrongdoing of numerous other individuals. Allegations of incompetence by Hill's prior attorneys, or wrongdoing by Ronald and his attorney, are not relevant to this inquiry unless they are linked to LOBS by well-pleaded factual allegations

23

showing liability.  Hill does not meaningfully engage with the reasoning behind the family court's denial of her set aside motion, which included that (1) Hill was aware of the allegedly omitted assets and (2) Hill chose to settle without a complete investigation into the community's assets and expressly waived any valuation of the community estate.  To state a cause of action against LOBS, Hill must offer well-pleaded factual allegations showing how, but for LOBS's alleged negligence, the family court would have altered its decision.  (See *Orrick*, *supra*, 107 Cal.App.4th at p. 1057.)  Moreover, she must show either that Ronald would have agreed to a more favorable settlement or that a family court would have ordered a more favorable division of assets.  (See *ibid*.)  Hill has not done so.

## DISPOSITION

The judgment is affirmed.  LOBS is entitled to its costs on appeal.


GUERRERO, J.

WE CONCUR:


McCONNELL, P. J.


DO, J.