Filed 3/23/22  Feng v. Lone Oak Fund CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| ZENGPENG FENG et al., | B308695 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 19PSCV00291) |
| v. | |
| LONE OAK FUND LLC et al., | |
| Defendants and Respondents. | |

APPEAL from judgments of the Superior Court of Los Angeles County, Peter A. Hernandez, Judge.  Reversed and remanded with directions.

MagStone Law and Dezhan Li for Plaintiffs and Appellants Zengpeng Feng, Jixiang Feng and Yongxiang Feng.

Garrett & Tully, Robert Garrett, Candie Y. Chang, Zi C. Lin, and Sonia Plesset Edwards for Defendants and Respondents Lone Oak Fund LLC and Royal Business Bank.

Fidelity National Law Group and Kevin R. Broersma for Defendant and Respondent Qualfax, Inc.

---

## INTRODUCTION

Appellants Zengpeng Feng and his sons Jixiang Feng and Yongxiang Feng[1] sued respondents Lone Oak Fund, LLC (Lone Oak), Qualfax, Inc. (Qualfax), and Royal Business Bank (Royal) (among others), seeking to quiet title to two pieces of real property (one owned by Jixiang and one owned by Yongxiang) or, failing that, to establish an equitable lien against the properties. Appellants alleged that, without their knowledge or consent, both properties were encumbered with deeds of trust in favor of respondents, securing loans respondents made to entities unaffiliated with appellants. Additionally, in 2019, Qualfax initiated a

---

[1]     Because appellants share a surname, we refer to them by their first names.

nonjudicial foreclosure sale at which it purchased Jixiang's property.

In the proceedings below, Lone Oak and Qualfax moved for judgment on the pleadings and Royal demurred. Relying on documents they asked the court to judicially notice, all argued the operative complaint failed to state causes of action against them because they were bona fide encumbrancers. The court granted both motions, sustained the demurrer without leave to amend, and subsequently entered judgments in respondents' favor. On appeal, appellants contend both that the court erred in granting the motions and sustaining the demurrer, and that regardless, we should remand because they can amend their operative complaint to state a cause of action.

We conclude we need not determine whether the court erred in granting the motions for judgment on the pleadings or in sustaining the demurrer because appellants have demonstrated a reasonable possibility that they can amend the operative complaint to state a cause of action against each respondent. We therefore reverse the judgments and remand the matter to permit them to do so.

## STATEMENT OF RELEVANT FACTS

### A.    *The First Amended Complaint*

Appellants filed a complaint in March 2019, and a first amended complaint (FAC) in June 2019. The FAC alleged that defendant Fai Wong aided appellants, "Chinese

nationals who have limited knowledge of English," with their purchase of real property in the United States, including the two properties at issue in this appeal. As with other properties Wong acquired for appellants, Wong purchased these properties through Golden Ocean Investment (a company controlled by Wong and his wife) using money provided by appellants; Golden Ocean then sold the properties to appellants for more than it paid. Specifically, Golden Ocean purchased a property on Via Santa Cruz Avenue in Whittier (the Santa Cruz Property) which was sold to Jixiang, and a property on Finisterra Place in Hacienda Heights (the Finisterra Property) which was sold to Yongxiang.

The FAC went on to allege that in January 2015, without appellants' knowledge or consent, the Santa Cruz Property was transferred to a company called Global Panda, which permitted respondent Lone Oak to record a "mortgage" against it. In November 2015, Royal recorded a "mortgage lien" against the Finisterra Property. In January 2017, Global Panda transferred the Santa Cruz Property to a company called Global Travel & Cultural Entertainment, and in November 2017, Global Travel permitted Lone Oak to record another "mortgage lien" against the Santa Cruz Property. Four days later, Qualfax extended a loan to Global Travel, also secured by a deed of trust recorded against the Santa Cruz Property. In January 2019, Qualfax conducted a nonjudicial foreclosure and took possession of the Santa Cruz Property.

Based on these allegations, appellants sought to quiet title to the Santa Cruz Property and the Finisterra Property in their favor. In the alternative, appellants asked the court to impose equitable liens against the properties in the amounts appellants provided to purchase them, and deem those liens superior to any other liens established against the properties after the money was provided. Appellants also sought injunctive relief.

### B. *Qualfax Moves for Judgment on the Pleadings*

In October 2019, Qualfax moved for judgment on the pleadings, arguing that because the allegations in the FAC, along with recorded documents that Qualfax asked to be judicially noticed, established that Qualfax was a bona fide encumbrancer, appellants could not state causes of action for quiet title or equitable lien against it. Specifically, Qualfax argued that a recorded document demonstrated that in 2014, Jixiang executed a power of attorney (the 2014 POA) naming defendant Liming Jiang his attorney-in-fact, which granted Jiang the power to transfer title to the Santa Cruz Property. Other recorded documents demonstrated that Jiang subsequently transferred title to Global Panda, which in turn transferred title to Global Travel, and Global Travel encumbered the Santa Cruz Property with a deed of trust securing a $300,000 loan Qualfax had extended to Global Travel (the Qualfax DOT). Because Global Travel had title

5

to the Santa Cruz Property, Qualfax did not need appellants' agreement to issue the loan or secure it with the Qualfax DOT.

In December 2019, appellants opposed Qualfax's motion, arguing that because Jixiang had granted Jiang only a "limited special power of attorney" and Jiang transferred the Santa Cruz Property without Jixiang's knowledge or consent, equity mandated that title should be quieted in their favor. Appellants also argued that Qualfax should have questioned whether Jiang was truly acting with Jixiang's authority, both because the grant deeds to Global Panda and Global Travel contained a statement that the conveyances were to "'secure a debt,'" and because Jiang transferred title to Global Panda, a corporation controlled by Jiang's husband (defendant Wong). Qualfax countered that nothing in appellants' opposition suggested Qualfax was anything but "an arms-length lender and a bona fide encumbrancer . . . ."

In December 2019, the court issued a minute order stating that, pursuant to a written stipulation, the hearing on the motion was continued to March 9, 2020. On March 9, 2020, the court continued the hearing to July 28, 2020, at 8:30 a.m.

### C.  *Substitution of Counsel*

On March 16, 2020, appellants' attorney moved to be relieved as counsel. On April 9, 2020, each appellant filed a

6

substitution of counsel form, electing to represent himself. The address each provided for himself was the address of attorney Michael Smith (attorney Smith) in Las Vegas, Nevada.

### D. *Lone Oak Moves for Judgment on the Pleadings*

On April 20, 2020, Lone Oak filed its own motion for judgment on the pleadings and request for judicial notice, making the same arguments Qualfax made in its motion (i.e., that the 2014 POA authorized Jiang to transfer title to the Santa Cruz Property, and that because Global Travel had title when the Lone Oak deed of trust (Lone Oak DOT) was recorded, Lone Oak did not need appellants' authorization). The motion was served electronically on attorney Smith.

On April 22, 2020, the court set both Lone Oak's motion and Qualfax's motion for hearing on July 28, 2020, at 1:30 p.m., and stated "Any briefs not yet filed will be due in accordance with the new hearing date(s)." On June 5, 2020, Lone Oak electronically served notice of the court's minute order on attorney Smith.

### E. *Royal Demurs*

On July 1, 2020, Royal demurred to the FAC, contending the FAC failed to state a claim against it, because judicially noticeable documents established Royal

was a bona fide encumbrancer of the Finisterra Property. Specifically, Royal contended that in July 2015, Yongxiang executed a power of attorney (the 2015 POA) appointing Fai Wong as his attorney-in-fact, which granted Wong the power to encumber the Finisterra Property. Wong, in turn, authorized Royal to record a deed of trust against the Finisterra Property (the Royal DOT) to secure a $1,680,000 loan made to Yongxiang.[2] In light of the 2015 POA, Royal contended, it did not need appellants' agreement to issue the loan or secure it with the Royal DOT. Royal electronically served its filings on attorney Smith, who later admitted receiving them.

On July 2, 2020, the court set Royal's demurrer to be heard on July 28, 2020, at 1:30 p.m. On July 7, 2020, Royal electronically served notice of this order on attorney Smith.

### F.    *Lone Oak and Qualfax Refile Their Motions*

On June 22, 2020, Lone Oak refiled its motion for judgment on the pleadings; nine days later, Qualfax refiled its motion. With the exception of the dates, the refiled motions were identical to the initial ones. Lone Oak electronically served its pleadings on attorney Smith, and Qualfax both electronically served attorney Smith, and sent the pleadings via overnight delivery to "Zhengjun Wang" and

---

[2]    The Royal DOT states the loan was made to Global Travel, not Yongxiang.

"Baohua Wang" c/o attorney Smith.[3]  Smith later admitted he received these motions.

On July 21, 2020, Lone Oak filed a notice of non-opposition, which was served electronically on attorney Smith.  The next day, Qualfax also filed a notice of non-opposition, which was served electronically and via overnight mail to attorney Smith.


### G.  *Judgment*

On July 28, 2020, the court heard both motions and the demurrer.  After noting that no appellant had appeared, the court granted the motions and sustained the demurrer without leave to amend, ordered respondents to provide the court with proposed judgments, and set an order to show cause why the case should not be dismissed.  Qualfax e-mailed a notice of this order to attorney Smith.

On August 24, 2020, the court entered a judgment in favor of Lone Oak and Qualfax, and another judgment in favor of Royal.  Notices of entry of both judgments were electronically served on attorney Smith.

On October 23, 2020, through new counsel, appellants appealed both judgments.  They also responded to the court's

---

[3]     The Wangs are plaintiffs and appellants in a case involving very similar facts; Lone Oak and Qualfax are also defendants and respondents in that case and, at the time, like appellants, the Wangs were representing themselves, but had given their address as "c/o" attorney Smith.

9

order to show cause, attesting that they had failed to oppose respondents' motions and demurrer because they had not received actual notice of the motions and demurrer, and because they believed attorney Smith, who was their attorney in a related case, would take care of their disputes. The response additionally contended both Jixiang and Yongxiang were unaware of the nature of the 2014 POA and 2015 POA when they signed them. Jixiang submitted a declaration in which he stated he believed the 2014 POA "would allow the attorney-in-fact to lease or manage the Santa Cruz property." Yongxiang submitted a similar declaration, claiming he believed the 2015 POA "would allow the attorney-in-fact Fai Wang [*sic*] to lease, rent out and take care of the Finisterra property for me." The court discharged the order to show cause.

## H.   *Requests for Judicial Notice on Appeal*

In July 2021, appellants requested we judicially notice a proposed second amended complaint (Proposed SAC), which was attached to a motion for relief from judgment that appellants had filed after their notice of appeal.[4] The Proposed SAC contains allegations that both Jixiang and Yongxiang believed the powers of attorney "would authorize

---

[4]     The request for judicial notice is accompanied by a declaration from counsel attesting that the court took appellants' motion off calendar "because '[t]he Court finds this matter is currently on Appeal and has no jurisdiction.'"

10

Fai [Wong] and his associate to manage or lease the Santa Cruz Property under Jixiang's name" and "the Finisterra Property under Yongxiang's name," but that "because of the fraud of Fai [Wong] and his associates," appellants were rendered "unaware of the nature of the document[s]" they signed. Additionally, the Proposed SAC alleges that Wong and Jiang "owed a fiduciary duty" to appellants, who "placed [in them] a special trust and confidence . . . ."

In September 2021, both Lone Oak and Royal requested we judicially notice a declaration from attorney Smith submitted with appellants' motion for relief from judgment. The declaration admitted attorney Smith received the motions for judgment on the pleadings filed by Lone Oak and Qualfax and the demurrer filed by Royal.

We grant the requests made by appellants and Lone Oak. We deny as redundant the request made by Royal.

## DISCUSSION

Appellants contend the court erred when it granted Lone Oak and Qualfax's motions and sustained Royal's demurrer, arguing that the pleadings and judicially noticed documents failed to establish that respondents were bona fide encumbrancers. Appellants additionally contend that they must be granted leave to amend the FAC because there is a reasonable possibility that they can state a cause of action against each respondent. Because we conclude that appellants have demonstrated they can amend to state a cause of action against each respondent, we need not

11

determine whether the court erred in granting the motions for judgment on the pleadings or in sustaining the demurrer.


### A. *Appellants May Demonstrate Their Ability to Amend on Appeal*

""""In the case of either a demurrer or a motion for judgment on the pleadings, leave to amend should be granted if there is any reasonable possibility that the plaintiff can state a good cause of action."" [Citation.] The plaintiff has the burden of showing what amendment can be made, and how it will change the legal effect of the pleading, so that it states a cause of action. [Citation.] A plaintiff can even make this showing for the first time on appeal." (*Ventura Coastal, LLC v. Occupational Safety & Health Appeals Bd.* (2020) 58 Cal.App.5th 1, 32-33; see also Code Civ. Proc., § 472c, subd. (a) ["When any court makes an order sustaining a demurrer without leave to amend the question as to whether or not such court abused its discretion in making such an order is open on appeal even though no request to amend such pleading was made"]; *Palm Springs Tennis Club v. Rangel* (1999) 73 Cal.App.4th 1, 7 ["plaintiff need not request leave to amend in order to preserve on appeal the issue of whether the court abused its discretion in sustaining a demurrer without leave to amend (Code Civ. Proc., § 472c)"]; *MacIsaac v. Pozzo* (1945) 26 Cal.2d 809, 816 ["section 472c of the Code of Civil Procedure . . . provides that the question whether the trial court abused its

discretion in sustaining a demurrer without leave to amend 'is open on appeal even though no request to amend such pleading was made.' [Citation.] Since the reason for the rule is the same on a motion for judgment on the pleadings, the same result should obtain"].)

Appellants did not request leave to amend their FAC, either in the only written opposition they submitted (in response to Qualfax's initial motion for judgment on the pleadings), or at the hearing on the motions (at which they did not appear). Respondents therefore contend we should not remand to permit appellants to amend because they failed to meet their burden below to demonstrate how they could amend successfully. Of course, we do not fault the trial court for failing to consider a pleading (the Proposed SAC) that was not before it, or for not considering arguments appellants failed to make below. Nevertheless, the issue before us is whether they have made the requisite showing on appeal. As explained below, we conclude they have.

### B. *Appellants Have Demonstrated a Reasonable Possibility of Successfully Amending*

#### 1. **Quiet Title**

Appellants contend that if permitted to amend their operative complaint, they would allege that both the 2014 POA and 2015 POA were void, rendering each respondent's deed of trust similarly void. Specifically, appellants intend to allege that Jixiang and Yongxiang were "'unaware of the

13

nature of'" the powers of attorney they signed "because of the fraud of Fai [Wong] and his associates," which would constitute "fraud in the inception," rendering void the powers of attorney, and any transactions resulting therefrom. (See, e.g., *Hotels Nevada v. L.A. Pacific Center, Inc.* (2006) 144 Cal.App.4th 754, 763 ["California law distinguishes between fraud in the 'inducement' of a contract and fraud in the 'execution' or 'inception' of a contract"]; *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 415 (*Rosenthal*) [fraud in the inception or execution ""'goes to the inception or execution of the agreement, so that the promisor is deceived as to the nature of his act, and actually does not know what he is signing, or does not intend to enter into a contract at all, mutual assent is lacking, and [the contract] is void'"" (italics omitted)]; *Estate of Stephens* (2002) 28 Cal.4th 665, 672 [when attorney-in-fact acts without authority under invalid power of attorney, attempted action is void, and any conveyance under such circumstances is void]; *Trout v. Taylor* (1934) 220 Cal. 652, 656 ["Numerous authorities have established the rule that an instrument wholly void, such as an undelivered deed, a forged instrument, or a deed in blank, cannot be made the foundation of a good title, even under the equitable doctrine of *bona fide* purchase"].)

Respondents counter that because Jixiang and Yongxiang admittedly knew they were signing powers of attorney, any alleged ignorance as to the documents' contents would not render them void. They further argue

14

that because the documents unambiguously described the powers being granted to Jiang and Wong, appellants' claim of ignorance provides no "escape from being bound [by the documents' terms]." We disagree.

We find our Supreme Court's decision in *Rosenthal* instructive. In *Rosenthal*, most of the 24 plaintiffs were customers of Great Western Bank who had invested in mutual funds sold by Great Western Financial Securities Corporation. (*Rosenthal*, *supra*, 14 Cal.4th at 403.) When the value of the funds decreased, the plaintiffs sued, alleging that "representatives of both corporations led them to believe that the GWFSC representatives actually worked for GWB, that funds sold by GWFSC were, or were as secure as, insured deposits with GWB, and that the GWFSC funds were backed by GWB or by the United States Government." (*Ibid.*) When the defendants moved to compel arbitration based on an agreement the plaintiffs had signed, the plaintiffs claimed those agreements were void due to fraud in the inception. (*Ibid.*) While our Supreme Court rejected most of these claims, it found a few were potentially meritorious. (*Id.* at 423-427.)

Two such claims were those of an 81-year-old Italian immigrant who spoke "'only a few words of English'" and could not "'read English at all,'" and her daughter who could "'speak and understand simple English,'" but could not "'read English very well at all,'" and had "difficulty reading 'complicated words or legal terms.'" (*Rosenthal*, *supra*, 14 Cal.4th at 427.) Both were depositors at Great Western

Bank. (*Ibid.*) The daughter received a call from someone stating he was with "'Great Western,'" and could help them earn higher returns. (*Ibid.*) When mother and daughter met with the individual, the mother informed him of her limited ability to understand English. (*Ibid.*) He then purportedly read aloud a contract to them in English -- with the daughter translating for the mother -- without ever mentioning an arbitration clause. (*Ibid.*) Both plaintiffs then signed the contract without reading it. (*Ibid.*) This happened a second time, with a different representative, when they increased their "'deposit'" into this new "'account.'" (*Ibid.*) Our Supreme Court held that this narrative, if true, "would establish facts sufficient to show reasonable reliance as an element of fraud in the execution of the client agreements. In light of plaintiffs' prior relationship with GWB, which they were led to believe was also the employer of [the two representatives], their limited ability to understand English, and [the representatives'] representations that their oral recitals accurately reflected the terms of the agreements, plaintiffs would not have been negligent in relying on the GWFSC representatives instead of reading the agreements themselves. (See *C. I. T. Corporation v. Panac* [(1944)] 25 Cal.2d [547,] 553-560 [plaintiffs' functional illiteracy in English, together with other party's misrepresentations regarding the character of the written contract, incomplete oral reading of the agreement, and urgings that plaintiffs sign it without reading it themselves or obtaining independent advice, held sufficient to support finding of

16

fraud in the inception].) Under these circumstances, we conclude, the alleged fraud of GWFSC's representatives, if true, would have deprived [these plaintiffs] of a reasonable opportunity to learn the character and essential terms of the documents they signed." (*Rosenthal*, *supra*, 14 Cal.4th at 428.)[5]

We find appellants similarly situated to the above-discussed plaintiffs in *Rosenthal*. Appellants alleged that they are "Chinese nationals who have limited knowledge of English . . . ." They also intend to allege in an amended complaint that Wong and Jiang were fiduciaries in whom appellants placed special trust and confidence, but that as a result of Wong's and Jiang's "fraud," appellants were led to believe the powers of attorney they signed operated to authorize Wong and his associates merely to manage or lease the two properties, not to transfer title. Qualfax does not dispute that Wong and Jiang owed appellants a fiduciary duty, and both Lone Oak and Royal

---

[5] Our Supreme Court also noted that a plaintiff's "limited facility with English" was insufficient on its own to constitute fraud in the inception. (*Rosenthal*, *supra*, 14 Cal.4th at 431.) It found, in the case of two other plaintiffs with limited English skills who did not tell the representative they were unable to read the contracts, and who did not allege that the representative "purported to read the contract to them or to explain its full contents orally," that the "failure to take measures to learn the contents of the document they signed is attributable to their own negligence, rather than to fraud on the part of GWFSC or its representatives." (*Ibid.*)

17

acknowledge that "the pleadings contain numerous allegations that Wong and his entities were fiduciaries, and that Appellants provided them with the necessary agency authority and Power of Attorney to act on their behalf."

"If the parties were in a fiduciary relationship in which the defendant owed the plaintiff a duty to explain the terms of a proposed contract between them, a breach of that duty may constitute constructive fraud and establish fraud in the execution." (*Mt. Holyoke Homes, L.P. v. Jeffer Mangels Butler & Mitchell, LLP* (2013) 219 Cal.App.4th 1299, 1308.) We conclude that appellants can sufficiently allege circumstances that, if true, would render void the 2014 POA and 2015 POA, which would in turn render void the transactions resulting therefrom.[6]

---

[6] Respondents cite several appellate court cases to support their contention that the 2014 POA and 2015 POA are not void. Though we would be bound to follow *Rosenthal* regardless, we find their cases inapposite. (*Erickson v. Bohne* (1955) 130 Cal.App.2d 553, 554, 557 [grant deed void when signed by person "physically and mentally ill and wholly incapable of transacting business" who "did not know she was signing a deed to said real property and had no intention of signing such a deed"]; *Stewart v. Preston Pipeline Inc.* (2005) 134 Cal.App.4th 1565, 1589 ["Plaintiff has cited no California cases (and we are aware of none) that stand for the extreme proposition that a party who fails to read a contract but nonetheless objectively manifests his assent by signing it—*absent fraud or knowledge by the other contracting party of the alleged mistake*—may later rescind the agreement on the basis that he did not agree to its terms" (italics added)]; *Casey v. Proctor* (1963) 59 Cal.2d 97 [mistakenly cited as 539 Cal.App.2d. 97], 104-105 [plaintiff not excused from
*(Fn. is continued on the next page.)*

## 2. Equitable Lien

"In general, equity will create a lien on property where this is necessary to accomplish substantial justice and protect creditors.  Thus, courts will construe the existence of equitable liens where the parties have erroneously created a defective mortgage . . . or, even in the absence of any agreement, where it is necessary to prevent unjust enrichment . . . ."  (*Grappo v. Coventry Financial Corp.* (1991) 235 Cal.App.3d 496, 509 (*Grappo*).)

Appellants contend that if they can prove respondents were not bona fide encumbrancers, "they may also prove their third cause of action [for] Equitable Lien, at least against Qualfax, who is in possession of the Santa Cruz Property."  Qualfax does not dispute this.  Lone Oak and Royal, however, cite *Grappo* to argue that "[c]ourts will impose an equitable lien in situations where parties intend to create a mortgage to secure a loan, but for a defect in the creation[,] no mortgage has been created."  But a defective mortgage is but one example of when an equitable lien may be appropriate.  Under *Grappo*, an equitable lien is

---

ignorance of scope of release agreement absent "contention that he was unable to read, or prevented from reading, the release before signing it"]; *Brookwood v. Bank of America* (1996) 45 Cal.App.4th 1667, 1674 ["'No law requires that parties dealing *at arm's length* have a duty to explain to each other the terms of a written contract, particularly where, as here, the language of the contract expressly and plainly provides for the arbitration of disputes arising out of the contractual relationship'" (italics added)].)

appropriate when "necessary to accomplish substantial justice and protect creditors." (*Grappo, supra*, 235 Cal.App.3d at 509.) Appellants have alleged a situation where equity could require the imposition of a lien on the properties for the amounts appellants paid for them.

Respondents also argue, "to the extent that Plaintiffs are claiming an equitable lien based on the purchase price they paid for" both properties, "the merger of their lien with their fee interest in the property would extinguish the lien and would be invalid against" the Lone Oak DOT and the Royal DOT. But appellants currently do not have a fee interest in the Santa Cruz Property -- Qualfax purchased the property at a nonjudicial foreclosure sale. Should appellants gain a fee interest through this lawsuit, no equitable lien will be needed, as appellants specifically request an equitable lien only "[i]n the event full title is not quieted in favor of the Plaintiffs in the Properties."

As for the Finisterra Property, while there are no allegations that title was transferred from Yongxiang, it is undisputed that it is still encumbered by the Royal DOT. In the Proposed SAC, appellants request that the court quiet title as to the Royal DOT, but ask in the alternative that they be granted an equitable lien against the Finisterra Property in the amount of the purchase price they provided, and that this lien be deemed superior to the Royal DOT. "[M]erger of the lien and ownership of the property in one person or entity extinguishes the lien, *unless it is necessary for the protection of the buyer's rights that the lien be*

20

*sustained.*" (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1235, italics added.) Here, depending on the ultimate facts proven, equity could require the court to impose a lien on the Finisterra Property in the amount of the purchase price appellants provided, and deem the lien superior to the Royal DOT.

### 3.   Injunction

Appellants also intend to allege a cause of action for an injunction. "An injunction is a remedy, not a cause of action." (*Venice Coalition to Preserve Unique Community Character v. City of Los Angeles* (2019) 31 Cal.App.5th 42, 54.) Nevertheless, despite the inapt pleading, we are aware of nothing that would prevent appellants from requesting the remedy of an injunction if tethered to a suitable cause of action.

**DISPOSITION**

The judgments in favor of respondents are reversed. On remand, appellants are granted leave to file an amended complaint. Respondents may challenge any such amended complaint in any manner permitted by law. In the interests of justice, the parties shall bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, P. J.

We concur:

WILLHITE, J.

COLLINS, J.